**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PENTHOL LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-416 |
| | § | |
| VERTEX ENERGY OPERATING, LLC, | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT VERTEX ENERGY OPERATING LLC'S MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 3

III.  PROCEDURAL BACKGROUND .......................................................................... 4

IV.   NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 5

V.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ............................ 5

VI.   ARGUMENTS AND AUTHORITIES ..................................................................... 6

  A.    Penthol fails to state a claim for a violation of Section 1 of the Sherman Act. .............. 6

  1.    Penthol fails to plead facts sufficient to allege Vertex engaged in a conspiracy because Penthol's claim is based on *Vertex's* unilateral actions. .......................................... 6

  2.    Penthol also fails to plead facts that demonstrate Vertex's unilateral "actions" unreasonably restrain trade because the alleged market injury is speculative. .......................... 8

  B.    Penthol fails to state a claim for breach of contract. ......................................... 9

  1.    The Court may consider the Agreement and the correspondence referenced in Penthol's Complaint to rule on this Motion. ............................................................ 9

  2.    The Parties' letters contradict Penthol's allegation that the Parties mutually terminated the Agreement. ....................................................................................... 11

  3.    Penthol's remaining allegations are insufficient to establish a breach of contract claim. . 12

  C.    Penthol fails to state a claim for business disparagement. ................................... 16

  D.    Penthol fails to state a claim for misappropriation of trade secrets. ........................ 17

VII.  CONCLUSION .............................................................................................. 19

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Anago, Inc. v. Tecnol Med. Prods., Inc.*,
  976 F.2d 248 (5th Cir. 1992) ..................................................................... 9

*Apani Sw., Inc. v. Coca–Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ..................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 5, 6, 8

*Cantu v. City of Corpus Christi, Tex.*, 2:15-CV-71,
  2017 WL 841117 (S.D. Tex. Mar. 1, 2017) ........................................... 10, 11

*Clearline Techs., Ltd., v. Cooper B-Line, Inc.*,
  2012 WL 43366 (S.D. Tex. Jan. 9, 2012)................................................. 18

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
  846 F.2d 284 (5th Cir. 1988) ..................................................................... 8

*Corrosion Prevention Techs. LLC v. Hatle*, 4:20-CV-2201,
  2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) ........................................... 16

*Dana Corp. v. Celotex Asbestos Settlement Tr.*,
  251 F.3d 1107 (6th Cir. 2001) ................................................................. 14

*Doe v. Humble ISD*, 4:18-CV-4281,
  2019 WL 3288385 (S.D. Tex. July 22, 2019) ....................................... 9, 10

*Forbes Inc. v. Granada Biosciences, Inc.*,
  124 S.W.3d 167 (Tex. 2003) ................................................................. 16

*Ford v. Houston Indep. Sch. Dist.*,
  97 F. Supp. 3d 866 (S.D. Tex. 2015)...................................................... 3, 4

*Ginzburg v. Mem'l Healthcare Sys., Inc.*,
  993 F. Supp. 998 (S.D. Tex. 1997)............................................................ 7

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
  547 F.3d 266 (5th Cir. 2008) ..................................................................... 6

*Grohman v. Kahlig*,
  318 S.W.3d 882 (Tex. 2010) ................................................................. 14

*Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 3:18-CV-2228-G,
  2019 WL 2357529 (N.D. Tex. June 4, 2019) ........................................... 10

*Hunter v. CitiMortgage, Inc.*, CV H-11-2966,
  2012 WL 13054486 (S.D. Tex. Mar. 7, 2012) ..................................... 13, 14

*In re Enron Corp.*,
  2010 WL 9077875 ........................................................................... 11, 12

*In re Lehman Bros. Holdings Inc.*,
  970 F.3d 91 (2d Cir. 2020) ................................................................. 14

*Location Servs., LLC v. Digital Recognition Network, Inc.*,
  2018 WL 5787317 (N.D. Tex. Nov. 5, 2018) ............................................ 9

*M. T. Reed Const. Co. v. Virginia Metal Products Corp.*,
  213 F.2d 337 (5th Cir. 1954) ................................................................... 14
*Maricopa Cnty. Med. Soc'y*,
  457 U.S. 332 (1982) ................................................................................. 6
*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ................................................................ 8, 9
*M-I L.L.C. v. Q'Max Sols., Inc.*,
  2019 WL 3565104 (S.D. Tex. Aug. 6, 2019) ........................................... 17
*Monsanto Co. v. Spray–Rite Serv. Corp.*,
  465 U.S. 752, (1984) ............................................................................ 6, 7
*Murphy Indus., Inc. v. Essex Ins. Co.*, 4:16-CV-03618,
  2017 WL 5127220 (S.D. Tex. Sept. 20, 2017) ......................................... 16
*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) .................................................................... 6
*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ...................................................... 18
*Rodriguez v. Villarreal*,
  314 S.W.3d 636 (Tex. App. – Houston [14th Dist.] 2010, no pet. ............ 14
*Rogers v. City of Yoakum*,
  660 F. App'x 279 (5th Cir. 2016) ............................................................ 11
*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
  28 F.3d 1379 (5th Cir. 1994) .................................................................... 9
*Sommers v. Concepcion*,
  20 S.W.3d 27 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ....... 15
*Spectrofuge Corp. v. Beckman Instruments, Inc.*,
  575 F.2d 256 (5th Cir. 1978) ................................................................ 2, 8
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................... 3, 10
*Valero Mtkg. & Supply Co. v. Kalama Int'l*,
  51 S.W.3d 345 (Tex. App. – Houston [1st Dist.] 2001, no pet.) .............. 13

Statutes

15 U.S.C. § 1 ......................................................................................... 6, 7, 8
18 U.S.C. § 1839(6) ..................................................................................... 17
Tex. Civ. Prac. & Rem. Code § 134A.002(2) ............................................... 17

Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1, 3

Under Federal Rule of Civil Procedure 12(b)(6), Defendant Vertex Energy Operating, LLC ("Vertex") files this Motion to Dismiss Plaintiff Penthol LLC's ("Penthol") Original Complaint.

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

In 2016, Penthol and Vertex entered into a Sales and Marketing Agreement (the "Agreement") in which Vertex would assist Penthol in bringing the Abu Dhabi National Oil Company's Group III Base Oil (the "Product") to the North American market for the first time. Under the Agreement, the Parties' respective roles were clearly defined: Penthol would supply the Product, and Vertex would market and promote the Product. Because Vertex was going to use its existing customer base to market the new Product, it needed to protect its critical customer relationships and position in the industry. As part of the Agreement, the Parties therefore agreed that neither side could ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. ████████████████████████████████████████████████████ ████████████. *Id.*

Penthol's new lawsuit is just its latest meritless attempt to avoid its non-circumvention obligations and take Vertex's customers for itself. After discovering Penthol's new CEO had begun to violate the Agreement by communicating directly with customers about the Product without Vertex's knowledge, Vertex stopped him by securing a Temporary Restraining Order and, after a full-day evidentiary hearing, a Temporary Injunction in Harris County District Court. In the three months since that decision, Penthol has appealed the TI order, removed Vertex's lawsuit and asked Judge Bennett for an emergency hearing to dissolve the TI, terminated the Agreement based

on dubious grounds, and sought another emergency hearing to dissolve the TI back in Harris County District Court based on the termination after Judge Bennett remanded Vertex's case.

Apparently dissatisfied with the decisions in Vertex's case so far, Penthol also filed this lawsuit. However, Penthol's allegations in this case are insufficient to support its claims and, in many instances, are directly contradicted by the documents that form the basis of its claims like the Agreement. Specifically, even if Penthol's allegations are true, they cannot support a claim under Section 1 of the Sherman Act because Penthol alleges it is *Vertex's* actions alone that unreasonably restrain trade. But the Fifth Circuit has held "[i]t is axiomatic that unilateral activity by a single firm cannot be reached via [Section 1 of the Sherman Act]." *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978).

In addition, Penthol cannot state a claim for breach of contract because the obligations it alleges Vertex was required to perform under ███ of the Agreement are not supported by the language of that section, ████████████████████████████████████████ ████████████████████████████████████████████. Penthol's allegations are also insufficient to establish special damages—a required element of its business disparament claim. Finally, Penthol's allegations do not support any of the elements of misappropriation of trade secrets under both the federal and Texas statutes because its description of the alleged trade secrets is too vague, it does not allege Vertex acquired the information by improper means, and Penthol does not explain which trade secrets it contends Vertex has actually used. For these reasons, this Court should dismiss all five claims in Penthol's Original Complaint with prejudice.

## II.   <u>FACTUAL BACKGROUND</u>

In 2016, Penthol had the opportunity to bring the Abu Dhabi National Oil Company's Group III Base Oil ("the Product") to the North American market for the first time.[1] Ex. 2, ¶¶ 1, 14. Base oils like the Product form the base of high-performance engine lubricants, and they are divided into different categories (Group I, Group II, Group III, Group IV) based on their specifications. *Id.*, ¶ 15. The North American market for base oils is difficult to break into, so Penthol reached out to Vertex, an established company in the industry with experience marketing and selling base oils in North America, for help marketing the Product. *Id.*, ¶¶ 18-20.

In its lawsuit, Vertex contends that Penthol and Vertex entered into an agreement under which Vertex would market, promote, and solicit sales of the Product to take advantage of Vertex's preexisting relationships. *See* Ex. 1. However, to protect Vertex's position in the industry and its critical relationships with customers and Penthol's relationship with its supplier, the Parties agreed, among other important promises, that ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████ .

---

[1] The following background facts are taken from Vertex's Original Petition, which is attached as Exhibit 2. To assist the Court in understanding the background of this case, Vertex has also attached prior orders from the Harris County District Court and the docket sheet from the federal case that was remanded. To be clear, Vertex is not asking the Court to assume these facts are true or accept these facts as evidence outside the pleadings. Instead, as part of the procedural history of this case, the Court may take judicial notice that these are the facts Vertex alleged in the State Case and of the judicial acts that have occurred since Vertex filed its lawsuit. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on Rule 12(b)(6) motion to dismiss, courts should consider "matters of which a court may take judicial notice."); *Ford v. Houston Indep. Sch. Dist.*, 97 F. Supp. 3d 866, 869 n.1 (S.D. Tex. 2015) (in the context of a 12(b)(6) motion to dismiss, a court "may take judicial notice of an order of another court" to recognize that the judicial act occurred).

In 2020, Penthol hired a new CEO, Harji Gill ("Gill"), its first non-clerical employee in the United States. Ex. 2, ¶ 37. Shortly after he joined Penthol, Gill began contacting and meeting with Vertex's customers without its knowledge. *Id*., ¶ 38. When Vertex confronted Gill about these meetings, he eventually admitted he had contacted multiple customers, including to see if they had any complaints about Vertex. *Id*. Based on Gill's actions, Vertex sued Penthol on October 13, 2020 in Harris County District Court to protect its customer relationships and goodwill—interests that ███ was supposed to protect and that Vertex believed now faced irreparable injury because of Penthol's breaches of the Agreement (the "State Case"). *See* Ex. 2.

### III.   PROCEDURAL BACKGROUND

On November 10, 2020, the 61st Judicial District Court held an evidentiary hearing on Vertex's request for a Temporary Injunction. The court granted Vertex's request and entered a Temporary Injunction. Ex. 3. On November 17, 2020, Penthol removed the State Case to the Southern District of Texas. *See* Ex. 4 (Dkt. 1). On December 7, 2020, Penthol filed four counterclaims against Vertex, including the same Sherman Act claim it asserts in this case. *Id*. (Dkt. 12). On December 10, 2020, Penthol moved to dissolve the Temporary Injunction and requested an emergency hearing on its motion. *Id*. (Dkt. 14, 15). On December 14, 2020, Vertex moved to remand the State Case. *Id.* (Dkt. 20). After the emergency hearing, Judge Bennett remanded the State Case on January 29, 2021. *Id*. (Dkt. 49).

After the State Case was remanded, Penthol reinstated the original appeal of the Temporary Injunction, filed this new lawsuit, and filed a second motion to dissolve the Temporary Injunction in the State Case. Both the new motion to dissolve and, most importantly, many of Penthol's claims in this lawsuit are based on Penthol's contention that the Parties "mutually agreed" to terminate

the Agreement earlier this year. *See* Dkt. 1, ¶ 1.[2] However, as discussed in more detail below, this

contention is unsupported by the Parties' correspondence. *See* Exs. 5-10. Instead, the letters clearly

demonstrate that *Penthol* chose to terminate the Agreement. In addition to basing its claims on this

false premise, Penthol has not alleged facts sufficient to state a claim under the Sherman Act,

breach of contract, business disparagement, and misappropriation of trade secrets.

## IV.   NATURE AND STAGE OF THE PROCEEDINGS

On February 8, 2021, Penthol filed this lawsuit, bringing claims under Section 1 of the

Sherman Act, the federal Defend Trade Secrets Act ("DTSA"), and Texas law, including breach

of contract, business disparagement, and the Texas Uniform Trade Secrets Act. *See* Dkt. 1. Penthol

served Vertex with the lawsuit on February 9, 2021. Dkt. 9. Vertex has timely filed its Motion to

Dismiss all of the claims in the Original Complaint.

## V.   STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Issue:      Should the district court find Penthol has not stated a claim for (1) violation of the
            Sherman Act, Section 1; (2) breach of contract; (3) business disparagement; and (4)
            misappropriation of trade secrets under the DTSA and TUTSA?

Answer:     Yes.

To survive a motion to dismiss, a party must plead "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotation marks omitted). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–

56 (2007). Only non-conclusory factual allegations are entitled to the presumption of truth at this

stage; conclusory allegations of law, inferences not supported by facts, and formulaic recitations

of the elements of a claim do not satisfy the pleading standard under the Federal Rules and will

---

[2] "This case presents two types of claims . . . (2) claims for breach of contract, business disparagement, and misappropriation of trade secrets that did not arise until Penthol and Vertex *mutually agreed* to terminate [the Agreement] on January 27, 2021." (emphasis added).

not defeat a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. This includes legal conclusions "couched as a factual allegation." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007).

## VI.   ARGUMENTS AND AUTHORITIES

### A.  Penthol fails to state a claim for a violation of Section 1 of the Sherman Act.

#### 1.  Penthol fails to plead facts sufficient to allege Vertex engaged in a conspiracy because Penthol's claim is based on *Vertex's* unilateral actions.

15 U.S.C. § 1, also known as the Sherman Act, prohibits all agreements that restrain trade. *See Ariz. v. Maricopa Cnty. Med. Soc'y,* 457 U.S. 332, 342 (1982). To establish a violation of § 1 of the Sherman Act, Penthol must show that: "(1) [Vertex and Penthol] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Apani Sw., Inc. v. Coca–Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002).

To satisfy the conspiracy element of a Sherman Act claim, Penthol must show "that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, (1984)). The Supreme Court explains "that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made . . . [it requires] enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly,* 550 U.S. at 556. A naked allegation of a conspiracy or agreement, without more, is not sufficient to state a claim under Section 1. *Id.*; *Norris*, 500 F.3d at 464.

To decide whether Penthol's Sherman Act claim can survive a motion to dismiss, the first question is whether Penthol's claim sufficiently alleges that Vertex and Penthol engaged in concerted action—that is, a "conscious commitment to a common scheme designed to achieve an

unlawful objective." *Monsanto Co.*, 465 U.S. at 764 (citation and internal quotation marks omitted). "Concerted activity within the scope of § 1 . . . occurs when one business entity takes action at the request of a second business entity." *Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1009 (S.D. Tex. 1997) (citation and internal quotations omitted).

Penthol fails to allege that Vertex engaged in a concerted action with any other entity. To meet this prong, Penthol alleges that the Agreement between itself and Vertex is the concerted action: "Once Vertex entered the Primary Market and the Sub-Market (as those terms are defined below), the Agreement became an unlawful restraint on trade and a per se violation of the Sherman Act because it was a naked agreement between competitors not to compete that had no procompetitive effects." *See* Dkt. 1, ¶ 28. This is striking because Penthol's own allegation suggests it is involved in the very Section 1 violation it complains about. In other words, Vertex and Penthol, by signing the agreement, are apparently co-conspirators.

Penthol, recognizing this dilemma, argues the Agreement was lawful when signed, but has only become unlawful years later because of Vertex's independent conduct. *Id.*, ¶ 29 ("Although this ██████████████████ was lawful when the Agreement was entered into because Vertex and Penthol were in a vertical supplier-sales representative relationship, it became unlawful once Vertex became a direct, horizontal competitor of Penthol and the Product."). Penthol therefore alleges Vertex, and only Vertex, "acted with the purpose and effect of unreasonably restraining and injuring competition in the Primary Market and the Sub-Market." *Id.*, ¶ 44. According to Penthol, its contract with Vertex is the concerted action, but only Vertex's actions were unlawful.

These facts cannot support a claim that Vertex violated 15 U.S.C. § 1 because the alleged "unlawful restraint on trade," or unlawful behavior, that Penthol complains about is not a "concert

of action between separate business entities," which is "[e]ssential to every § 1 offense." *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978) ("Essential to every § 1 offense is concert of action between separate business entities."). Instead, Penthol only complains about Vertex's activities. But "[i]t is axiomatic that unilateral activity by a single firm cannot be reached via this section [15 U.S.C. § 1]." *Id.*

Penthol's allegations, even taken as true, do not demonstrate that Vertex and Penthol adopted "a conscious commitment to a common scheme *designed to achieve an unlawful objective*." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 375 (5th Cir. 2014) (emphasis added). In other words, Penthol's claim does not set forth facts that show a "meeting of the minds" between Vertex and other alleged conspirators for an anticompetitive purpose. *See Twombly*, 550 U.S. at 557. Such allegations fall short of the requirements of Rule 8(a)(2). *See id.* Thus, the Court should dismiss Penthol's Sherman Act claim and Penthol's related requests for declaratory relief. *See* Dkt. 1, ¶ 95.

### 2. Penthol also fails to plead facts that demonstrate Vertex's unilateral "actions" unreasonably restrain trade because the alleged market injury is speculative.

Penthol's Sherman Act claim must also allege facts showing that the alleged conspiracy unreasonably restrains trade in the United States Group III base oil market. *See Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 289 (5th Cir. 1988) (stating that only "unreasonable restraint[s]" are actionable under § 1). Even if Penthol's allegations are true, they fail to show that the alleged concerted action—let alone Vertex's unilateral "actions"—injures competition in the North American Group III base oil market. This is because Penthol's assertions about market injury are speculative, and "[s]peculation about anticompetitive effects is not enough" to survive a motion to dismiss. *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994). Penthol, instead, "must allege facts that show that the [concerted

action] actually harmed competition" in the market. *Marucci Sports*, 751 F.3d at 376. But Penthol's Complaint makes no such showing.

The crux of Penthol's Sherman Act claim is that "Vertex *was trying* to eliminate a maverick competitor from the market and thereby harm competition in the Primary Market and the Sub-Market."[3] *See* Dkt. 1, ¶¶ 30, 65 (emphasis added). Although Penthol alleges Vertex's actions have caused higher prices, Penthol does not actually allege that Vertex has succeeded in eliminating Penthol from the market. According, even taking Penthol's allegations as true, Vertex has not *yet* managed to reduce competition or product choice. Penthol's allegations are therefore insufficient to state a claim under Section 1 of the Sherman Act. *Location Servs., LLC v. Digital Recognition Network, Inc.*, 2018 WL 5787317, at *2 (N.D. Tex. Nov. 5, 2018) ("the Fifth Circuit narrowly interprets the meaning of antitrust injury, excluding from it the *threat* of decreased competition.") (emphasis added) (citing *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992)). *See also Doe v. Humble ISD*, 4:18-CV-4281, 2019 WL 3288385, at *2 (S.D. Tex. July 22, 2019) (Hanen, J.) ("The court is not bound to accept factual assumptions or legal conclusions as true . . .").

## B.  Penthol fails to state a claim for breach of contract.

### 1.  The Court may consider the Agreement and the correspondence referenced in Penthol's Complaint to rule on this Motion.

Penthol claims Vertex has breached what it calls Vertex's "post-termination obligations under the Agreement." Dkt. 1, ¶¶ 47, 69. To support this claim, Penthol references and quotes from letters the Parties exchanged, starting with Penthol's December 18, 2020 "Notice of Certain Early

---

[3] Penthol also claims that Vertex's actions have harmed Penthol. Dkt. 1, ¶ 67 ("Because of Vertex's conduct, prices have been higher and there are few alternatives to participants in the Primary Market and the Sub-Market, there causing injury to . . . Penthol."). This allegation is irrelevant because "antitrust laws are designed to protect competition, not competitors." *Marucci Sports,* 751 F.3d at 376 (affirming the district court granting the motion to dismiss "because the only plausible injury it asserts is its own.").

Termination Events." *Id.*, ¶¶ 47-53. Penthol also references and quotes from the Agreement itself. *Id.*, ¶¶ 49, 71-73. Vertex has attached the Agreement as Exhibit 1 and all of the letters Penthol references in the Complaint as Exhibits 5– 9 to this Motion.

Although Penthol did not attach the Agreement or the letters to its Complaint, the Court may review them to decide whether Penthol's claims should survive a motion to dismiss. *Tellabs, Inc.*, 551 U.S. at 322 ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). *See also Cantu v. City of Corpus Christi, Tex.*, 2:15-CV-71, 2017 WL 841117, at *3 (S.D. Tex. Mar. 1, 2017) (Head, J.) (collecting cases). This includes documents attached to a defendant's motion to dismiss as long as the documents are "referred to in the plaintiff's complaint and are central to the claim." *Doe*, 2019 WL 3288385, at *2.

Here, both the Agreement and the Parties' letters are central to Penthol's breach of contract and business disparagement claims. In breach of contract cases, courts routinely find the contract itself is central to the claim. *See, e.g.*, *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 3:18-CV-2228-G, 2019 WL 2357529, at *3 (N.D. Tex. June 4, 2019) ("Generally, when a plaintiff's claim is based on the terms of a contract, the documents constituting a contract are central to the plaintiff's claim.") (internal quotation marks omitted).

Penthol quotes extensively from the letters to establish the circumstances under which the Agreement was terminated, Vertex's alleged "post-termination obligations," and the specific ways in which Vertex allegedly breached the Agreement and disparaged Penthol. *See, e.g.*, Dkt. 1, ¶¶ 53 (arguing Vertex's failure to comply with conditions set out in February 4, 2021 letter constitutes a breach of the Agreement); 52, 73 (arguing Vertex's demands in January 27, 2021 letter

constitutes a breach of the Agreement); 55, 56 (arguing Parties mutually agreed to terminate Agreement based on letters and claiming Vertex disparaged Penthol by "falsely telling [customers] that Penthol terminated the Agreement"); 60 (arguing Vertex "falsely" told customers Penthol terminated the Agreement). They are therefore central to Penthol's claims, and the Court should consider them while evaluating this Motion.

### 2. The Parties' letters contradict Penthol's allegation that the Parties mutually terminated the Agreement.

Importantly, if the Agreement or the letters contradict Penthol's allegations, the Agreement and letters control and the Court *does not* have to assume the contradicted allegations are true. *Rogers v. City of Yoakum*, 660 F. App'x 279, 285 (5th Cir. 2016); *Cantu*, 2017 WL 841117, at *3; *In re Enron Corp.*, 2010 WL 9077875, at *2. For example, Penthol alleges "Vertex elected to terminate the Agreement early under ███████████████████████████████████ ██████████████████████████ Dkt. 1, ¶ 49. Penthol repeats this allegation throughout the Complaint and alleges as part of multiple claims that Vertex "falsely" told customers that Penthol terminated the Agreement. *See id.*, ¶¶ 52, 53, 55, 56, 60, 73.

However, this allegation is contradicted by the letters and the Agreement. Specifically, the letters demonstrate that on December 18, 2020, Penthol notified Vertex that it believed Vertex had breached the Agreement by allegedly selling a competing product, among other reasons. Ex. 5. Based on this allegation, Penthol said it would "promptly terminate the Agreement under ████ ████ if Vertex did not "timely cure" the alleged breach within thirty business days. *Id*. at 2. Under ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. Based on the plain

language of the Agreement, Penthol's notice created a thirty-day deadline for Vertex to cure the alleged default. However, the Agreement did not require Vertex to wait the full 30 business days to either cure or otherwise respond. *Id.* Accordingly, on January 19, 2021, Vertex informed Penthol it would not cure the alleged breaches by the deadline because it had not done anything to breach the Agreement. Ex. 6. Vertex even told Penthol it believed "that both parties, and most importantly, the customers of the ADNOC Group III base oil, are best served if Penthol maintains the Agreement until the previously agreed termination date." *Id.* at 2.

Penthol did not withdraw its default notice based on the information Vertex provided in its letter. After over a week of silence from Penthol, Vertex was therefore left with no choice but to acknowledge *Penthol's decision* to terminate the Agreement, which it did on January 27. Ex. 7. While Vertex recognized it could not do anything to change Penthol's decision to terminate the Agreement ▇▇▇▇▇▇), Vertex made clear that it believed that decision was improper. *Id.* at 1.[4] Accordingly, the plain language of the letters contradicts Penthol's allegation that the Parties mutually agreed to terminate the Agreement, and the Court therefore does not need to assume that fact is true when evaluating this Motion.

### 3. Penthol's remaining allegations are insufficient to establish a breach of contract claim.

To establish a breach of contract claim, Penthol must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *Hunter v. CitiMortgage, Inc.*,

---

[4] "As we detailed in our January 19, 2021 letter back to you, Penthol's default allegations are false. Nevertheless, Penthol has not withdrawn its December 18, 2020 termination notice. So, pursuant to ▇▇▇▇ ▇▇ Vertex considers the Agreement terminated, albeit wrongfully by Penthol."

CV H-11-2966, 2012 WL 13054486, at *3–4 (S.D. Tex. Mar. 7, 2012) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)).[5]

Penthol claims Vertex breached ███ of the Agreement, which provides █████████,
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████. In the Complaint, Penthol interprets this provision to mean that Vertex was prohibited from telling customers the Agreement was terminated, Vertex had to continue to provide its "service and expertise" to Penthol without compensation, and that Vertex generally needed to "cooperate" with Penthol in a number of arbitrary ways. *See* Dkt.1, ¶¶ 50, 52, 53. For example, without any basis in the language of the Agreement, Penthol alleges Vertex was required provide copies of its policies and procedures to Penthol, agree to issue a joint press release to customers, and give Penthol copies of communications with its customers about the Agreement's termination. *Id.*, ¶ 53.

To decide whether these allegations, if true, are sufficient to support a claim that Vertex breached ███, the Court should construe the contract. *Hunter*, 2012 WL 13054486, at *5. When interpreting a contract, the Court "must examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *Id.* (internal quotation marks omitted) (citing *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010)). "[C]ontractual provisions should be read in context, so that courts can avoid construing contracts in a manner that would lead to an absurd result." *Id.* (citing *Rodriguez v. Villarreal*, 314 S.W.3d 636, 645 (Tex. App. – Houston [14th Dist.] 2010, no pet.)).

---

[5] Although Vertex disputes that Penthol will ultimately show it performed under the Agreement, this Motion focuses on the third and fourth elements of its breach of contract claim.

In this case, the question is whether the words ████████████████████████████

████████████████████████████████████████ actually required Vertex to do the litany of

tasks to "cooperate" with Penthol that Penthol outlines in the Complaint. They do not. ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ This is exactly what Vertex asked Penthol to do in its January 27, 2021 letter when it provided

a summary of its outstanding invoices, including Penthol had already approved for payment. *See*

Ex 7.

Similarly, Penthol's allegation that Vertex somehow breached ██████ by calculating and

demanding payment for its outstanding invoices "without allowing Penthol" to setoff the amounts

due and "without offering" to reimburse Penthol for its expenses is also unsupported by the

language in the Agreement and Penthol's own allegations. *See* Dkt. 1, ¶¶ 72, 73. ██████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

Second, assuming *arguendo* that Penthol is even permitted to assert a setoff, that is not an action Vertex has to "allow" Penthol to do. Instead, the Agreement allows Vertex to make a demand for Penthol to pay its outstanding obligations, and it allows Penthol to reduce its payment by any amounts Vertex owes to it. *See Sommers v. Concepcion*, 20 S.W.3d 27, 35 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("The right of setoff allows entities that owe each other money to apply their debts to each other."). Vertex's initial demand is therefore not a breach of this section. Similarly, Vertex was also not under an obligation to "offer" to pay Penthol any expenses. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

Moreover, although Penthol includes a conclusory statement that it has incurred damages because of Vertex's alleged breaches, it does *not* allege that it actually paid the amounts Vertex demanded in its January 27 letter or any other way this unpaid demand damaged it. Moreover, although Penthol alleges Vertex's alleged refusal to cooperate made it more difficult for Penthol to fulfill outstanding contracts, it notably does not allege it actually failed to meet any contractual obligations with customers, that it was forced to spend money it would not have otherwise, or any other facts to support a damages claim. Penthol has not alleged sufficient facts to meet the third or

fourth elements of a breach of contract claim, and the Court should therefore dismiss its breach of contract claim and Penthol's related request for declaratory relief. *See* Dkt. 1, ¶ 96.[6]

### C.  Penthol fails to state a claim for business disparagement.

Under Texas law, "to prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Corrosion Prevention Techs. LLC v. Hatle*, 4:20-CV-2201, 2020 WL 6202690, at *5–6 (S.D. Tex. Oct. 22, 2020) (Hanen, J.) (citing *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).[7]

"In the business disparagement context, special damages means that 'the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade or loss of other dealings." *Id.* (internal quotation marks omitted). "Special damages are never presumed as they represent specific economic losses that must be proven." *Id.* In sum, Penthol must plead "specific contracts or sales" that it lost because of Vertex's actions. *Id.* at *6.

In paragraph 78 of the Complaint, Penthol simply alleges that "Penthol has been injured and suffered special damages as a direct and proximate result of Vertex's conduct. Penthol therefore seeks adequate compensation for the damages inflicted by Vertex." Penthol does not point to any specific lost sales, lost contracts, or anything else that Vertex's allegedly false

---

[6] Because Penthol has not brought a declaratory judgment claim, the basis for Penthol's requested "declaratory relief" is unclear. If Penthol intended to bring a declaratory judgment claim that mirrors its breach of contract claim, the Court should dismiss that claim because it does not "introduce any new facts or issues outside of its original breach of contract claim." *Murphy Indus., Inc. v. Essex Ins. Co.*, 4:16-CV-03618, 2017 WL 5127220, at *6 (S.D. Tex. Sept. 20, 2017).

[7] Like the breach of contract claim, while Vertex disputes Penthol will ultimately prove any element of the business disparagement claim, this Motion focuses on the last element.

statements caused. Because Penthol's allegations are clearly insufficient to support the special damages element, the Court should dismiss Penthol's business disparagement claim.

**D.  Penthol fails to state a claim for misappropriation of trade secrets.**

To state a claim for misappropriation of trade secrets under both the federal Defend Trade Secrets Act ("DTSA") and Texas Uniform Trade Secrets Act ("TUTSA"), Penthol must show "(1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *M-I L.L.C. v. Q'Max Sols., Inc.*, No. CV H-18-1099, 2019 WL 3565104, at *3 (S.D. Tex. Aug. 6, 2019). "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means. TEX. CIV. PRAC. & REM. CODE § 134A.002(2); 18 U.S.C. § 1839(6). Improper means does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." *Id*.

Penthol's allegations are insufficient to establish all three elements of its misappropriation of trade secret claim. First, Penthol simply states that the trade secrets at issue are "trade secrets relating to Customers and the Product consisting of, among other things: price, cost, and other financial information; logistical and transportation information; sales and marketing information and plans; Customer lists, Purchase Contracts, files, and other information; and business plans." Dkt. 1, ¶ 81. When a plaintiff "fail[s] to identify the specific trade secret information it claims has been misappropriated in its complaint, the Court must dismiss [the claim] . . . ." *Clearline Techs., Ltd., v. Cooper B-Line, Inc.*, No. 11-cv-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012). To properly identify the trade secret, Penthol must "describe the subject matter of the trade secret with sufficient particularity to . . . permit the defendant to ascertain at least the boundaries within which

the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (internal citations and quotations omitted). Penthol's vague descriptions of its trade secrets, including unidentified prices, costs, and "financial information, "files" and "other information" are clearly insufficient to meet this element.

In addition, the Agreement directly contradicts Penthol's allegation that items like customer lists, logistical and transportation information, and sales and marketing information and plans were *Penthol's* trade secrets. Instead, under the Agreement those items were explicitly Vertex's responsibility and came from Vertex. *See* █████████████████████████████ ████████████████████████████████ Penthol therefore cannot meet the first element of its trade secret misappropriation claim.

Second, in the Complaint Penthol admits that Vertex properly and legally received the alleged trade secrets in the course of its duties under the Agreement. Dkt. 1, ¶ 84. Penthol does not allege, and it cannot allege, that Vertex acquired the allegedly trade secret information through improper means or through a breach of a confidential relationship. ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████Penthol therefore cannot meet the second element of trade secret misappropriation.

Finally, while Penthol alleges Vertex has used its trade secrets to create marketing plans, customer lists, pricing, and business development activities, it does not explain which specific trade secrets Vertex is supposedly using for these activities. *See* Dkt. 1, ¶ 84. Penthol therefore cannot meet the third element of trade secret misappropriation. The Court should dismiss Penthol's

---

[8] *See also* █████████████████████████████████████████████████████████

trade secret misappropriation claims under both the DTSA and TUTSA and Penthol's related request for injunctive relief. *See* Dkt. 1, ¶ 97.

## VII.   <u>CONCLUSION</u>

Penthol's allegations in the Complaint, taken together with the Agreement and the correspondence incorporated into the Complaint, demonstrate that Penthol cannot state a claim for a violation of Section 1 of the Sherman Act, breach of contract, business disparagement, or misappropriation of trade secrets. Vertex therefore respectfully requests the Court dismiss Penthol's Original Complaint in its entirety.

Dated: March 2, 2021

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Todd W. Mensing*
Todd Mensing
Federal Bar No. 302944
Texas Bar No. 24013156
Jordan Warshauer
Federal Bar No. 2994699
Texas Bar No. 24086613
Kelsi White
Federal Bar No. 2995914
Texas Bar No. 24098466
Harrison Scheer
Federal Bar No. 3556683
Texas Bar No. 24110333
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone:  713-655-1101
Facsimile: 713-655-0062
tmensing@azalaw.com
jwarshauer@azalaw.com
kwhite@azalaw.com
hscheer@azalaw.com

**ATTORNEYS FOR DEFENDANT VERTEX ENERGY OPERATING, LLC.**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to the Court's procedures, I hereby certify that on March 1, 2021, and March 2, 2021, I notified Lewis Smith, counsel for Plaintiff, via telephone and email, of the issues asserted in this motion. The parties tried but could not agree that the pleading deficiency could be cured in any part by a permissible amendment offered by the pleading party.

*/s/ Jordan Warshauer*
Jordan Warshauer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2021, a true and correct copy of the above and foregoing has been served through CM/ECF and email on all counsel of record.

*/s/ Jordan Warshauer*
Jordan Warshauer
