UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENTHOL LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-416 |
| | § | |
| VERTEX ENERGY OPERATING, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

William M. Katz, Jr.
Attorney-in-Charge
Texas Bar No. 00791003
S.D. Tex. Bar No. 21581
william.katz@tklaw.com
Dina McKenney
Texas Bar No. 24092809
S.D. Tex. Bar No. 3501700
dina.mckenney@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

J. Michael Bell
Texas Bar No. 02079200
S.D. Tex. Bar No. 5574
michael.bell@tklaw.com
Caitlin E. Gernert
Texas Bar No. 24093140
S.D. Tex. Bar No. 3306023
caitlin.gernert@tklaw.com

THOMPSON & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

Winstol D. Carter, Jr.
Texas State Bar No. 03932950
S.D. Tex. Bar No. 2934
winn.carter@morganlewis.com
William R. Peterson
Texas State Bar No. 24065901
S.D. Tex. Bar No. 1035932
william.peterson@morganlewis.com
Lewis A. Smith
Texas State Bar No. 24088439
S.D. Tex. Bar No. 2292401
lewis.smith@morganlewis.com
Heidi Rasmussen
Texas State Bar No. 24090345
S.D. Tex. Bar No. 3027157
heidi.rasmussen@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDING ........................................................1

II.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ................................1

III.  SUMMARY OF THE ARGUMENT ...............................................................1

IV.  FACTUAL BACKGROUND .........................................................................2

V.  LEGAL STANDARD ..................................................................................4

VI.  ARGUMENTS AND AUTHORITIES.............................................................5

    A.  Vertex invites the Court to apply an improper legal standard. ..............................5

    B.  Penthol has alleged a plausible Sherman Act claim. ................................5

        1.  Penthol has pleaded facts showing a contract in restraint of trade. ............6

        2.  Penthol has sufficiently alleged an unreasonable restraint on trade in the relevant market...............................................................7

    C.  Penthol has alleged a plausible breach-of-contract claim....................................11

        1.  The Court should not consider evidence extrinsic to Penthol's Complaint in ruling on the Motion to Dismiss. ...........................................12

        2.  In any event, the parties' correspondence supports Penthol's allegations and does not require dismissal of Penthol's breach-of-contract claim...........................................................................14

        3.  The ███████ shows that Penthol has adequately pleaded a breach-of-contract claim. ................................................................15

    D.  Penthol has alleged a plausible business-disparagement claim. ...........................17

    E.  Penthol has alleged a plausible misappropriation-of-trade-secrets claim............18

VII.  Conclusion ..........................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allchem Performance Products, L.P. v. Frey*,
   No. 3:07-CV-1696-M, 2008 WL 1848461 (N.D. Tex. Apr. 21, 2008) .................................... 19

*Anago, Inc. v. Tecnol Med. Prods.*,
   976 F.2d 248 (5th Cir. 1992) ..................................................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 4, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 4, 5, 7

*Budhathoki v. Nielsen*,
   898 F.3d 504 (5th Cir. 2018) ..................................................................................................... 1

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ............................................................................................... 4, 12

*Deauville Corp. v. Federated Dep't Stores, Inc.*,
   756 F.2d 1183 (5th Cir. 1985) ................................................................................................. 16

*Encino Motorcars, LLC v. Navarro*,
   138 S. Ct. 1134 (2018) ............................................................................................................... 6

*Forbes Inc. v. Granada Biosciences, Inc.*,
   124 S.W.3d 167 (Tex. 2003) .................................................................................................... 17

*Fulcrum Credit Partners LLC v. Chipmos Techs. Inc.*, No. A-10-CA-060-SS,
   2010 WL 11444280 (W.D. Tex. Mar. 30, 2010) ..................................................................... 12

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
   547 F.3d 266 (5th Cir. 2008) ..................................................................................................... 6

*In re Katrina Canal Breaches Lit.*,
   495 F.3d 191 (5th Cir. 2007) ................................................................................................... 13

*In re Northstar Offshore Grp., LLC*,
   616 B.R. 695 (Bankr. S.D. Tex. 2020) .............................................................................. 12, 13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   940 F. Supp. 2d 367 (E.D. La. 2013) ........................................................................................ 5

*In re Xtreme Power Inc.*,
   563 B.R. 614 (Bankr. W.D. Tex. 2016) ................................................................................... 12

*Johnson v. Hosp. Corp. of Am.*,
   95 F.3d 383 (5th Cir. 1996) ..................................................................................................... 18

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
   453 B.R. 645 (N.D. Tex. 2011) ................................................................................................ 13

*Kjessler v. Zaappaaz, Inc.*,
  No. CV 4:18-0430, 2019 WL 3017132 (S.D. Tex. Apr. 24, 2019) ........................................... 7

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ......................................................................................................... 8

*Location Services, LLC v. Digital Recognition Network, Inc.*,
  2018 WL 5787317 (N.D. Tex. Nov. 5, 2018) ................................................................... 10

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ............................................................................................ 6

*M-I L.L.C. v. Q'Max Sols., Inc.*,
  No. CV H-18-1099, 2019 WL 3565104 (S.D. Tex. Aug. 6, 2019) ......................................... 18

*M-I LLC v. Stelly*,
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ....................................................................... 18, 19

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
  806 F.3d 835 (5th Cir. 2015) ....................................................................................... 7, 8

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ......................................................................................................... 6

*Moser v. Omnitrition Int'l Inc.*,
  No. 3:16-CV-2558-L, 2018 WL 1368789 (N.D. Tex. Mar. 16, 2018) ............................. 17, 18

*Multiflex, Inc. v. Samuel Moore & Co.*,
  709 F.2d 980 (5th Cir. 1983) ..................................................................................... 15, 16

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ............................................................................................ 4

*Rio Grande Royalty C.. v. Energy Transfer Partners, L.P.*,
  786 F. Supp. 2d 1190 (S.D. Tex. 2009) .......................................................................... 8, 9

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
  28 F.3d 1379 (5th Cir. 1994) .......................................................................................... 10

*SB Int'l., Inc. v. Jindal*, CIV A 306-CV-1174-G,
  2007 WL 1411042 (N.D. Tex. May 14, 2007) .................................................................... 5

*Scanlan v. Texas A &M Univ.*,
  343 F.3d 533 (5th Cir. 2003) .......................................................................................... 12

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*,
  200 F.3d 307 (5th Cir. 2000) ....................................................................................... 5, 6

*Taylor v. Christus St. Joseph Health Sys.*,
  216 F. App'x 410 (5th Cir. 2007) .................................................................................... 11

*Teladoc, Inc. v. Tex. Med. Bd.*,
  112 F. Supp. 3d 529 (W.D. Tex. 2015) ..................................................................... 10, 11

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*,
  965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd ............................... 19

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*,
  496 F.3d 403 (5th Cir. 2007) .................................................................. 9

*United States v. Cadillac Overall Supply Co.*,
  568 F.2d 1078 (5th Cir. 1978) ................................................................ 9

*United States v. Gen. Motors Corp.*,
  384 U.S. 127 (1966)................................................................................ 8

*Villarreal v. Wells Fargo Bank, N.A.*,
  814 F.3d 763 (5th Cir. 2016) .............................................................. 11

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) ..................................................................... 9

*Wright v. Christian & Smith*,
  950 S.W.2d 411 (Tex. App.–Houston [1st Dist.] 1997, no writ) .............. 11

**Statutes**

15 U.S.C. § 1 .............................................................................................. 6, 9

18 U.S.C. § 1836(b)(1) .................................................................................. 18

TEX. CIV. PRAC. & REM. CODE § 134A.004................................................ 18

**Rules**

FED. R. CIV. P. 12(d) .................................................................................... 12

FED. R. CIV. P. 12(b)(6) ..................................................................... 1, 4, 12

Plaintiff Penthol LLC has stated viable claims against Defendant Vertex Energy Operating, LLC for violating Section 1 of the Sherman Act, breach of contract, business disparagement, and misappropriation of trade secrets under both the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA").  Accordingly, the Court should deny Vertex's Motion to Dismiss ("Motion to Dismiss") [Dkts. 11, 13].

## I.  NATURE AND STAGE OF PROCEEDING

Penthol filed its Complaint on February 8, 2021, challenging (1) Vertex's efforts to stifle competition in the marketing and sale of Group III base oil in the United States, and (2) Vertex's improper conduct following the termination of ████████████████████████████ ████████████████.  Original Compl. ("Compl.") ¶¶ 2, 5 [Dkt. 1].  Because this case is at the Rule 12(b)(6) stage, Penthol's well-pleaded allegations must be taken as true.

## II.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Vertex's Motion presents the following four issues, all of which are reviewed *de novo*. *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018).

1. Whether Penthol has plausibly alleged that Vertex violated Section 1 of the Sherman Act.
2. Whether Penthol has plausibly alleged that Vertex breached the ████████.
3. Whether Penthol has plausibly alleged that Vertex disparaged Penthol's business.
4. Whether Penthol has plausibly alleged that Vertex misappropriated Penthol's trade secrets.

Because the answer to each of these questions is "yes," Vertex's Motion to Dismiss must be denied.

## III.  SUMMARY OF THE ARGUMENT

The Court should deny Vertex's Motion to Dismiss for five reasons.  *First*, Vertex misunderstands the procedural posture of this case, under which the Court must assume that Penthol's well-pleaded facts are true.  *Second,* Penthol has sufficiently alleged the existence of an agreement that violates Section 1 of the Sherman Act.  And Vertex's argument to the contrary

misunderstands the basis for Penthol's claims and ignores the factual allegations in Penthol's Complaint. *Third*, Penthol has sufficiently alleged a breach-of-contract claim that is supported by the express terms of the parties' ███████. *Fourth*, Penthol has sufficiently alleged a business-disparagement claim because it has alleged facts from which the Court can reasonably infer special damages. *Fifth*, Penthol has sufficiently alleged that Vertex misappropriated Penthol's trade secrets under state and federal law because the ██████ termination rendered unlawful Vertex's further use of those trade secrets post-termination.[1]

## IV.    FACTUAL BACKGROUND

The facts supporting Penthol's claims span no less than 17 pages and over 40 paragraphs in the Complaint. *Id.* ¶¶ 19–60. █████████████████████████████████████ ███████████████████████████████████████████ for the Product,[2] which is a Group III base oil. *Id.* ¶ 3.  Group III base oil is used to make high-performance synthetic engine oils for passenger vehicles, industrial lubricants, food grade white oils, process oils, and high-performance, heavy-duty engine oils. *Id.* ¶ 2.  When the parties entered into ████████, Vertex did not compete directly or indirectly with Penthol or the Product. *Id.* ¶ 3.  After entering into ████████, however, Vertex became a direct competitor. *Id.* ¶ 4.  But rather than compete on the merits, Vertex stifled competition in the market for Group III base oil, misappropriated Penthol's trade secrets, and disparaged Penthol's business. *Id.* ¶¶ 4, 8.

Vertex unreasonably restrained trade and injured competition in the relevant markets for Group III base oil. *Id.* ¶ 44.  But for Vertex's improper conduct: (1) Vertex's market power would be reduced; (2) there would be increased competition in the relevant markets; (3) prices for Group

---

[1] If the Court finds that any of Penthol's claims should be dismissed, Penthol seeks leave to amend its Complaint to address those deficiencies.

[2] Capitalized terms not defined in this response have the meaning given to them in the Complaint.

III base oil would be lower in those markets; and (4) the quality and quantity of Group III base oil and related services offered for sale in those markets would be higher.  *Id.*  Simply put, Vertex's conduct resulted in higher prices, less competition, and lower quality and quantity of Group III base oil in the relevant markets.  *Id.*

Additionally, upon termination of the ███████, Vertex must "settle and liquidate all transactions and obligations entered into pursuant to th[e] ███████ in an orderly and commercially reasonable manner." *Id.* ¶ 5.  Although Penthol and Vertex agree that the ███████ is terminated, *id.* ¶ 5; *see* Mot. at 12, Vertex failed to act in an orderly and commercially reasonable manner by, among other things, intentionally cancelling meetings with Penthol, denying Penthol access to important information, misrepresenting why the ███████ was terminated, and failing to process, finalize, or issue Purchase Contracts, Customer orders and invoices, and Product shipments.  *Id.* at ¶ 54.  Vertex also breached the ███████ by improperly conditioning its cooperation in winding down the ███████ and transitioning work to Penthol on the receipt of all amounts allegedly owed by Penthol, even though the ███████ provides that the parties must first determine what amount—if any—is actually owed to Vertex.  *Id.* at ¶ 52.  Vertex's conduct damaged Penthol by forcing it to make costly alternate arrangements to process orders and ship the Product.  *Id.* at ¶ 54.

Furthermore, Vertex has unilaterally contacted Customers and others, including the Abu Dhabi National Oil Company ("ADNOC"), to disparage Penthol and its economic interests, including by (among other things) falsely telling them that Penthol terminated the ███████, that Penthol is not a reliable supplier or distributor of the Product, and that Penthol will not be able to sell the Product to them anymore.  *Id.* at ¶ 55.  Vertex made these false misrepresentations to harm Penthol and its reputation and economic interests, in an attempt to displace Penthol as the Product's

North American distributor. *Id.* at ¶ 56. Vertex has also made the transition of work from Vertex to Penthol as disruptive as possible to harm Penthol and its reputation. *Id.*

Finally, Vertex has misappropriated Penthol's trade secrets. Vertex obtained access to Penthol's confidential information and trade secrets through the ████████. *Id.* at ¶ 58. The confidential information and trade secrets to which Vertex was given access include, but are not limited to, price, cost, and other financial information; logistical and transportation information; sales and marketing information and plans; Customer lists, Purchase Contracts, files, and other information; and business plans. *Id.* Although Vertex was entitled to access Penthol's confidential information and trade secrets while it was Penthol's independent sales representative, Vertex has no right to that information and those trade secrets now that the ████████ is terminated. *Id.* Nevertheless, Vertex is still using and disclosing Penthol's confidential information and trade secrets improperly when Vertex sells its own Group III base oil. *Id.*

As explained below, the Complaint contains sufficient allegations to state a claim for all of Penthol's causes of action. Accordingly, Vertex's Motion to Dismiss must be denied.

## V.   LEGAL STANDARD

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation omitted). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). A claim is plausible when it pleads sufficient factual content to support the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do," it need not contain detailed factual allegations.  *Twombly*, 550 U.S. at

555.  Rather, the facts must be just enough to raise a right to relief above the speculative level.  *Id.*

## VI.    ARGUMENTS AND AUTHORITIES

Vertex seeks dismissal of Penthol's claims for Sherman Act violations, breach of contract,

business disparagement, and misappropriation of trade secrets under the DTSA and the TUTSA.

For the following reasons, the Court should deny the Motion to Dismiss.

### A.    Vertex invites the Court to apply an improper legal standard.

When explaining this case's factual background, Vertex improperly relies on its allegations

in a separate state-court proceeding, rather than the facts alleged in Penthol's Complaint.  Not only

does Vertex's approach conflict with *Twombly* and *Iqbal*, it also prevents the Court from assuming

those facts are true or accepting them as evidence outside the pleadings for purposes of Vertex's

Motion to Dismiss.  Mot. at 3 n.1; *see also SB Int'l., Inc. v. Jindal*, CIV A 306-CV-1174-G, 2007

WL 1411042, at *2 (N.D. Tex. May 14, 2007) (Ex. 1) ("If, however, Jindal wishes the court to

take judicial notice of the contents of those documents, the court concludes that any 'facts'

contained in the petitions, counterclaims, and motion are subject to reasonable dispute and,

therefore, not appropriate for judicial notice.").  Accordingly, Penthol objects to the Court's

consideration of Vertex's irrelevant and improper factual allegations when ruling on the Motion

to Dismiss.  For purposes of that motion, Penthol's well-pleaded allegations must be taken as true,

and Vertex must wait until this case's merits phase to challenge their accuracy.

### B.    Penthol has alleged a plausible Sherman Act claim.

To state a Sherman Act claim, Penthol must allege (1) the existence of a contract,

combination, or conspiracy that (2) unreasonably restrains trade in the relevant market and

(3) affects interstate or foreign commerce.  *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F.

Supp. 2d 367, 392 (E.D. La. 2013) (citing *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc.*

*Ctrs., Inc.*, 200 F.3d 307, 312 (5th Cir. 2000)).   As explained below, Penthol has sufficiently

pleaded these requirements, and Vertex's request to dismiss this claim should be denied.

### 1.   Penthol has pleaded facts showing a contract in restraint of trade.

Vertex's argument that Penthol has not alleged the existence of a conspiracy rests on a false

premise: that a Sherman Act claim can be based ***only*** on a conspiracy.   *See* Mot. at 6 (arguing that

"Penthol fails to plead facts sufficient to allege Vertex engaged in a conspiracy").   Although the

Sherman Act prohibits conspiracies to restrain trade, its scope is not limited ***only*** to conspiracies:

> Every ***contract, combination … or conspiracy***, in restraint of trade
> or commerce among the several States, or with foreign nations, is
> declared to be illegal.

15 U.S.C. § 1 (emphasis added).   As explained by the Supreme Court, "'or' is 'almost always

disjunctive.'"   *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018).   The statute's

text therefore confirms that it prohibits three types of conduct: a contract, a combination, and a

conspiracy.   Accordingly, a contract—like the ████████ at issue here—can give rise to a

Sherman Act violation.

Vertex's cases do not stand for a contrary proposition.   For example, the Supreme Court in

*Monsanto* considered "the standard of proof required to find a vertical price-fixing ***conspiracy***"

and therefore did not address a Sherman Act claim predicated on a contract.   *Monsanto Co. v.

Spray-Rite Serv. Corp.*, 465 U.S. 752, 755 (1984).   Indeed, the Supreme Court in *Monsanto*

explicitly acknowledged that a Sherman Act violation can arise from a contract.   *Id.* at 761

("Section 1 of the Sherman Act requires that there be a '***contract***, combination … or conspiracy.'"

(emphasis added)); *see Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368,

373 (5th Cir. 2014) (noting that the Sherman Act "prohibits all ***agreements*** that restrain trade"

(emphasis added)); *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008)

(noting that the Sherman Act applies to contracts as well as conspiracies).   Contrary to Vertex's

argument, *see* Mot. 6–8, Penthol is not alleging that Vertex's unilateral conduct is a Sherman Act violation.  Penthol's Complaint could not make this more clear: "[T]he ███████ including the Non-Circumvention Provision, has improperly restrained trade since Vertex became a direct competitor of Penthol and the Product, and since then has reflected a horizontal agreement among competitors that is per se unlawful." *See, e.g.*, Compl. ¶ 62.  It is thus the ███████ that gives rise to Penthol's claim, not Vertex's unilateral conduct.

Penthol need only allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556; *see id.* at 570 (noting that there is no heightened pleading standard in an antitrust case).  But Penthol has done more than that by identifying a contract that violated the Sherman Act—*i.e.*, the ███████ Accordingly, Vertex's argument fails.[3]  *See Kjessler v. Zaappaaz, Inc*., No. CV 4:18-0430, 2019 WL 3017132, at *10 (S.D. Tex. Apr. 24, 2019) (Ex. 2) ("If a complaint includes non-conclusory allegations of direct evidence of an agreement, a court need go no further on the question whether an agreement has been adequately pled.  Direct evidence of an agreement includes *a document or conversation explicitly manifesting the existence of the agreement in question*." (citation omitted) (emphasis added)).

### 2.    Penthol has sufficiently alleged an unreasonable restraint on trade in the relevant market.

Vertex seeks dismissal of Penthol's Sherman Act claim based on the alleged failure to plead "facts showing that the alleged conspiracy unreasonably restrains trade in the United States Group III base oil market."  Mot. at 8.  Vertex's argument misconstrues federal antitrust law and ignores the distinction between "per se" and "rule of reason" antitrust violations.  *MM Steel, L.P.*

---

[3] Vertex cites no authority for its argument that Penthol cannot bring a Sherman Act claim based on a contract to which it was a party.  *See* Mot. at 7.  Nor does the Sherman Act's text include such a limitation.

*v. JSW Steel (USA) Inc*., 806 F.3d 835, 848 (5th Cir. 2015) ("Whether a restraint on trade is per se illegal or is analyzed under the rule of reason is a key distinction in antitrust law.").  As explained below, Penthol is asserting both per-se and rule-of-reason antitrust claims.  Because Vertex's argument does not even apply to per-se claims under the Sherman Act, Penthol's per-se claim must proceed to the merits.  And Penthol has sufficiently pleaded its rule-of-reason claim, so it cannot be dismissed either.

<blockquote>a.   <u>Penthol need not allege an unreasonable restraint on trade to state a per-se Sherman Act claim.</u></blockquote>

"There are two types of anti-trust analysis: one for agreements that are so plainly anti-competitive that they may be deemed illegal per se" and one for agreements that are unlawful under the "rule of reason." *Rio Grande Royalty C.. v. Energy Transfer Partners, L.P*., 786 F. Supp. 2d 1190, 1197–98 (S.D. Tex. 2009).  Penthol alleges both types in its Complaint.  Compl. ¶ 62 ("[T]he ███████ . . . has improperly restrained trade since Vertex became a direct competitor of Penthol and the Product, and since then has reflected a horizontal agreement among competitors that is per se unlawful."); *id.* ¶ 63 ("In the alternative, the ███████ and Vertex's conduct are unlawful under the rule of reason.").

The Supreme Court has repeatedly held that per-se violations have "a pernicious effect on competition and lack of any redeeming virtue [and] are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *United States v. Gen. Motors Corp*., 384 U.S. 127, 146 (1966); *accord Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (holding that "[t]he *per se* rule, treating categories of restraints as necessarily illegal, eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work").

In accordance with the Supreme Court's holdings, plaintiffs like Penthol need not allege that complained-of actions unreasonably restrained trade when those actions are alleged to be a per-se antitrust violation.  *See Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 412 (5th Cir. 2007) ("Some types of agreements have, however, been found to be almost inherently anticompetitive. Such agreements can be considered *per se* violations of section 1, meaning that ***the law does not require a plaintiff to provide the usual proof that the agreement at issue is actually anticompetitive in the particular case***." (emphasis added)); *see Rio Grande Royalty Co.*, 786 F. Supp. 2d at 1197.  Per-se antitrust violations include agreements that allocate customers or markets among horizontal competitors.  *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1090 (5th Cir. 1978) ("We hold that the allocation of customers is a per se violation of Section One of the Sherman Act.").  Accordingly, Vertex's request to dismiss Penthol's per-se claim under the Sherman Act fails at the outset because Penthol need not allege an unreasonable restrain on trade in a relevant market to state a per-se claim that the █████████ illegally allocates customers to Vertex and prevents Penthol from competing for them.

> b.   Penthol has pleaded facts showing an unreasonable restraint on trade under the rule of reason.

Penthol's rule-of-reason claim likewise survives dismissal because the Complaint sufficiently alleges that Vertex's illegal conduct had anti-competitive effects in a relevant market. This is all that is required to avoid dismissal.  "At the pleading stage, a plaintiff may satisfy the unreasonable-restraint element by alleging that the conspiracy produced anticompetitive effects in the relevant markets.  Anticompetitive effects include increased prices, reduced output, and reduced quality." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 100 (3d Cir. 2010) (citation omitted); *see also Anago, Inc. v. Tecnol Med. Prods*., 976 F.2d 248, 249 (5th Cir. 1992) ("Typical anticompetitive effects include increased prices and decreased output.").

The Complaint specifically addresses the issues of increased prices, reduced output, and reduced quality in the relevant markets. Penthol explicitly alleges that, but for Vertex's illegal conduct, "(1) Vertex's market power in the [relevant markets] would be reduced; (2) there would be increased competition in those markets; (3) prices for Group III base oil would be lower in those markets; and (4) the quality and quantity of Group III base oil and related services offered for sale in those markets would be higher." Compl. ¶ 44. The detailed facts supporting these anticompetitive effects span dozens of paragraph in the Complaint. *Id.* ¶¶ 19–43. And they include specific facts explaining how Vertex is excluding Penthol from the relevant markets and thus preventing a maverick competitor (*i.e.*, Penthol) from "making Group III base oil more affordable" to consumers. *Id.* ¶ 30. "Because of Vertex's conduct, prices have been higher and there are few alternatives for participants in the [relevant markets], thereby causing injury to competition, consumers, and Penthol." *Id.* ¶ 67. These harms—"increased prices [and] reduced choice"—are exactly "the kind of injuries that the antitrust laws were enacted to prevent." *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F. Supp. 3d 529, 537 (W.D. Tex. 2015).

Rather than address Penthol's specific allegations, Vertex cherry picks one sentence to argue that "the alleged market injury is speculative."[4] Mot. at 8. But in so arguing, Vertex ignores

---

[4] Vertex cites *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1380 (5th Cir. 1994), for the proposition that "'[s]peculation about anticompetitive effects is not enough' to survive a motion to dismiss." *See* Mot. at 8. But *Roy B. Taylor Sales* was not a motion-to-dismiss case. It involved the reversal of a jury verdict for "insufficient evidence of either a threat or injury to competition." 28 F.3d at 1381. Vertex's other case is also distinguishable. In *Location Services, LLC v. Digital Recognition Network, Inc.*, the plaintiff made "conclusory allegations about reduced competition, higher prices, loss of choice, reduced output, and lower quality of service", but failed to "plead any facts to show [those were] the result of anticompetitive conduct." No. 4:18-CV-744-A, 2018 WL 5787317, at *2 (N.D. Tex. Nov. 5, 2018) (Ex. 3). Unlike the plaintiff in *Location Services*, Penthol has pleaded specific facts to define the relevant markets and to explain how Vertex's illegal conduct caused anticompetitive effects in those markets and injured Penthol. Compl. ¶¶ 32–44.

the clear, non-speculative allegations discussed above,[5] including Penthol's allegation that "Vertex's conduct has resulted in higher prices, less competition, and lower quality and quantity of Group III base oil in the Primary Market and the Sub-Market."  Compl. ¶ 44; *see id.* ¶ 67.  These are the same allegations that the Fifth Circuit has already found sufficient to defeat a motion to dismiss.  *See Taylor v. Christus St. Joseph Health Sys.*, 216 F. App'x 410, 412 (5th Cir. 2007) (Ex. 4) ("Taylor must have alleged that there was a rise in the price of gastroenterology services above a competitive level, a decrease in the supply of gastroenterologists in the relevant market, or a decrease in the quality of gastroenterology service provided.").  Because Penthol's allegations must be taken as true, *see Iqbal*, 556 U.S. at 678, Vertex cannot ignore them for purposes of its Motion to Dismiss.  Instead, those allegations show that Vertex's motion must be denied.

## C.     Penthol has alleged a plausible breach-of-contract claim.

To plead a breach-of-contract claim, Penthol must allege facts showing: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.–Houston [1st Dist.] 1997, no writ)).  Vertex disputes only the third and fourth elements.  *See* Mot. at 13 n.5.  Neither supports dismissal, and Vertex is asking the Court to consider improper extrinsic evidence.

---

[5] Vertex also improperly conflates speculative injury with injury that is conditioned on a future event.  Although the former is speculative, the latter is not, as the *Teladoc* court recognized when finding that the plaintiffs had met their burden to show anticompetitive effects arising from a new rule that was not yet effective.  112 F. Supp. 3d at 537.  In doing so, the court rejected the Texas Medical Board's argument that it was "speculation" to determine what would happen once the rule became effective.  *Id.* at 543–44.

1.  **The Court should not consider evidence extrinsic to Penthol's Complaint in ruling on the Motion to Dismiss.**

Vertex first urges the Court to consider the ███████ and the parties' correspondence to rule on the Motion to Dismiss. Mot. at 9–11. Although the ███████ is central to Penthol's claims, the parties' correspondence is not, so the Court should not consider it.[6]

"It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'" *Fulcrum Credit Partners LLC v. Chipmos Techs. Inc.*, No. A-10-CA-060-SS, 2010 WL 11444280, at *7 (W.D. Tex. Mar. 30, 2010) (Ex. 5) (quoting *Scanlan v. Texas A &M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003)). This rule has a limited exception. A court may consider extrinsic documentary evidence when ruling on a Rule 12(b)(6) motion only if (1) the document is attached to a defendant's motion to dismiss; (2) the document is referred to in the plaintiff's complaint; and (3) the document is central to the plaintiff's claims. *Collins*, 224 F.3d at 498–99; *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 710 (Bankr. S.D. Tex. 2020) (Ex. 6).

Although the first two elements are straightforward—and Penthol does not dispute their satisfaction here—"the Fifth Circuit has not articulated a test for determining when a document is 'central' to the plaintiff's claims." *Northstar*, 616 B.R. at 710. "Lower courts interpreting this element have defined it to include only those documents necessary to establish an *element* of one of the plaintiff's claims." *In re Xtreme Power Inc.*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016) (Ex. 7) (citing cases). So, for example, if the plaintiff's claim is based on a contract's terms, then

---

[6] If the Court decides to consider the parties' correspondence, Penthol is entitled to notice and an opportunity to present all material that is pertinent to the Motion to Dismiss, which requires discovery before the Court rules on the motion. FED. R. CIV. P. 12(d).

the contract is obviously central to the plaintiff's claim and may be considered.[7]  *Northstar*, 616 B.R. at 710; *see In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (noting that a court may consider at the motion to dismiss stage, those contracts central to the plaintiff's breach of contract suit).  "However, if a document referenced in the plaintiff's complaint is ***merely evidence of an element*** of the plaintiff's claim, then the court may not incorporate it into the complaint."  *Northstar*, 616 B.R. at 710 (emphasis added).

Applying this standard, the parties' correspondence is not central to Penthol's breach-of-contract claim.  Vertex maintains that, because "Penthol quotes extensively from the letters to establish the circumstances under which the ▓▓▓▓ was terminated, Vertex's alleged 'post-termination obligations,' and the specific ways in which Vertex alleged breached the ▓▓▓▓ and disparaged Penthol," the letters are central to Penthol's claim.  Mot. at 10.  Not so.  Although the letters may be evidence of an element of Penthol's breach-of-contract claim, they are not *necessary* to establish any of the four elements discussed above.  Because Penthol could prove its breach-of-contract claim at trial without referring to the parties' correspondence, that correspondence is not "central" to that claim.  *See Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662–63 (N.D. Tex. 2011) (Ex. 8) ("Here, the William Blair Report is not central to the Trustee's claims because it is not necessary to establish an element of any of his claims but is merely one piece of evidence that the he relies on to support his allegations.  Unlike a breach-of-contract case, in which the contract is itself a fact that the plaintiff must prove, the Trustee could conceivably prove Bruno's insolvency at trial without ever mentioning the William Blair Report.").

---

[7] For this reason, Penthol agrees that the Court's may consider the ▓▓▓▓ in ruling on the Motion to Dismiss.

For all these reasons, the parties' correspondence is not central to Penthol's breach-of-contract claim, and the Court should not consider it when ruling on Vertex's Motion to Dismiss.

**2.      In any event, the parties' correspondence supports Penthol's allegations and does not require dismissal of Penthol's breach-of-contract claim.**

Even if the Court considers the parties' correspondence, the Motion to Dismiss still must be denied for two reasons.  First, the correspondence plausibly supports Penthol's allegation that the parties mutually agreed to terminate the ████████ on January 27, 2021, and thus Vertex's contrary argument must be rejected.  *See* Mot. at 12.  Second, regardless of how the ████████ was terminated, ████████████████████████████████████████████████████ ████████, and it has not done so.

The parties' correspondence supports Penthol's termination-by-mutual-agreement allegations.  The Complaint alleges that Penthol gave Vertex notice of early termination on December 18, 2020.  Compl. ¶ 47.  Vertex initially denied that an early-termination event had occurred in its January 19, 2021 letter.  *See id.* at ¶ 48; Mot. at Ex. 6.  But on January 27, 2021, Vertex changed its position and stated that it "considers the ████████ terminated, albeit wrongfully by Penthol."  Mot. at Ex. 7.  Penthol had not terminated the ████████ at that time, however, nor could it have done so.  ████████████████████ required Penthol to give Vertex "thirty (30) Business Days" to cure the early-termination events discussed in the December 18 notice and prohibited Penthol from terminating the ████████ until that cure period expired in February 2021.[8]  Vertex apparently misread the ████████ choosing to consider it terminated after just 30 calendar days, rather than the ████████████████████████████████

---

[8] The ████████ defines "Business Day" as "any day except a Saturday or Sunday or any other day on which commercial banks in Houston, Texas are authorized or required by Applicable Law to be closed for business."  ████████ at 2.

██████. Accordingly, by its January 27 letter, Vertex elected to terminate the ████████████

████████████████████████████████████████████████████████

█████████  Compl. ¶ 49.  Penthol confirmed its ████████ to terminate the █████████ in a

January 29, 2021 letter.  Mot. at Ex. 8 ("To be clear, Penthol agrees with Vertex that the █████████

has been terminated under ██████████████████████.").

Even if Vertex were right that the █████████ was terminated by Penthol rather than by the

parties' mutual agreement, that would not support dismissal of Penthol's breach-of-contract claim.

Regardless of how the █████████ was terminated, █████████ required Vertex to █████████

████████████████████████████████████████████████████████

██████████████████████████  Compl. ¶ 5.  Although Vertex disputes Penthol's

allegations, they allege a plausible breach of █████████████████ for the reasons given

below, irrespective of how the Agreement was terminated under █████████.  Accordingly, the

parties' correspondence cannot support dismissal of Penthol's breach-of-contract claim.

**3.   The █████████ shows that Penthol has adequately pleaded a breach-of-contract claim.**

Penthol's breach-of-contract claim rests on Vertex's post-termination conduct that violated

████████████████████.  ████████████████████████████████

████████████████████████████████████████████████████████

██████████████████  Compl. ¶ 49 (emphasis added).  Importantly, the Motion to Dismiss does

not even attempt to argue that the Court can decide at the motion-to-dismiss stage whether Vertex's

post-termination conduct was "orderly and commercially reasonable."  This omission is not

surprising because the Fifth Circuit has found that decision to present a fact question ill-suited for

pretrial resolution.  *See, e.g.*, *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 988 (5th Cir.

1983) ("The question of reasonableness is a fact question for the jury."), *disapproved of on other*

*grounds by Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1192 (5th Cir. 1985). For this reason alone, the Motion to Dismiss should be denied.

The arguments actually made by Vertex fare no better because they all invite the Court to construe the ████████ while ignoring Vertex's obligation to act in ████████████████████ ████████████████ *See* Mot. at 12–15.   Vertex's position is especially puzzling given its recognition that "the Court must examine and consider the entire ████████ in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *Id.* at 13 (internal quotations omitted).   Applied properly, this legal standard requires denial of the Motion to Dismiss.

Penthol has stated a plausible breach of ████████ by alleging that, among other things, Vertex "unilaterally notified Customers that Vertex was no longer an independent sales representative of the Product and removed Penthol's access to important Customer information. Vertex's conduct made it difficult, if not impossible, for Penthol to ensure that Customers' Purchase Contracts were satisfied in a timely manner." Compl. at ¶ 50 (alterations omitted).   In addition, "rather than cooperate with Penthol in an orderly and commercially reasonable manner, Vertex has intentionally cancelled meetings with Penthol; denied Penthol access to Customer and other information related to the ████████ misrepresented to Customers and others the reason for the ████████ termination; failed to process and finalize Purchase Contracts; failed to process Customer orders and issue Customer invoices for the Product; failed to make shipments of the Product; and forced Penthol to make costly alternate arrangements to process orders and ship the Product." *Id.* at ¶ 54.   These "costly alternate arrangements" satisfy the damages element of Penthol's breach-of-contract claim.   *See id.*; *see also id.* at ¶ 55 ("Vertex's post-termination conduct has thus damaged Penthol and will continue to do so in the future.").

16

But these are not all of the factual allegations supporting Penthol's breach-of-contract claim.  Penthol also alleges that Vertex breached ███████████████████████████████ ██████, which allow Penthol to █████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.* at ¶ 51 (alterations omitted). ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ *Id.* (alterations omitted).

Penthol  further  alleges  that  "Vertex  breached  its  ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████ *Id.* at ¶ 52; *see id.* ¶ 74 █████████████████

████████████████████.

Put  simply,  Penthol  has  more  than  adequately  alleged  that  Vertex  plausibly  breached ██████████████████████  in multiple ways.  Accordingly, the Motion to Dismiss must be denied.

**D.      Penthol has alleged a plausible business-disparagement claim.**

"To defeat a motion to dismiss on a business disparagement claim, a plaintiff must set forth allegations from which the court can reasonably infer that '(1) the defendant published false and disparaging  information  about  it,  (2) with  malice,  (3) without  privilege,  (4) that  resulted in special damages to the plaintiff.'" *Moser v. Omnitrition Int'l Inc.*, No. 3:16-CV-2558-L, 2018 WL  1368789,  at  *3  (N.D.  Tex.  Mar.  16,  2018)  (Ex.  9)  (quoting  *Forbes  Inc.  v.  Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).  Vertex contests only the fourth element—

17

special damages.  *See* Mot. at 16, n.7.  "To prove special damages, a plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendants." *Id.*; *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996).  Because Penthol has done so, the Motion to Dismiss must be denied.

Penthol alleges that Vertex contacted several Customers and ADNOC, "falsely telling them that Penthol terminated the ███████, that Penthol is not a reliable supplier or distributor of the Product, and that Penthol will not be able to sell the Product to them anymore."  Compl. ¶ 55. Penthol alleges that Vertex made these false statements on January 28, 2021, because "Vertex is now a competitor of Penthol and the Product, and Vertex wants to sell its Group III base oil to the Customers, thereby displacing Penthol as the Customers' supplier.  Vertex would also like to displace Penthol as [ADNOC's] distributor of the Product in North America." *Id.* ¶ 56.  These are allegations from which the Court "can reasonably infer that" Penthol suffered special damages. *Moser*, 2018 WL 1368789, at *3 (Ex. 9).  Accordingly, the Motion to Dismiss must be denied, as it ignores these allegations and selectively focuses instead on only two sentences in one paragraph of the Complaint.  *See* Mot. at 16.

**E.     Penthol has alleged a plausible misappropriation-of-trade-secrets claim.**

"Both TUTSA and the DTSA permit recovery of damages for trade secret misappropriation." *M-I L.L.C. v. Q'Max Sols., Inc.*, No. CV H-18-1099, 2019 WL 3565104, at *3 (S.D. Tex. Aug. 6, 2019) (Ex. 10) (citing TEX. CIV. PRAC. & REM. CODE § 134A.004; 18 U.S.C. § 1836(b)(1)).  To state a claim under both statutes, Penthol must allege that "(1) a trade secret existed, (2) the trade secret was acquired through a 'breach of a confidential relationship' or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772 (S.D. Tex. 2010).  The Complaint far exceeds this pleading standard.

First, Penthol alleges the existence of several trade secrets. *See* Compl. ¶ 7 ("Vertex obtained access to Penthol's confidential information and trade secrets relating to Customers and the Product, including (but not limited to) price, cost, and other financial information; logistical information; sales and marketing information and plans; Customer lists, Purchase Contracts, files, and other information; and business plans."); *id.* ¶ 84 (same). These items are trade secrets under both Texas and federal law. *See Allchem Performance Products, L.P. v. Frey*, No. 3:07-CV-1696-M, 2008 WL 1848461, at *4 (N.D. Tex. Apr. 21, 2008) (Ex. 11) ("Items such as customer lists, pricing information, client information, customer preferences, [and] buyer contacts ... have been shown to be trade secrets." (quoting *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd)). Vertex's argument that Penthol has failed to allege a "specific" trade secret ignores that these items are trade secrets *by definition*, which is enough to defeat the Motion to Dismiss. The discovery process will ultimately reveal the specific trade secrets that Vertex has misappropriated. *See Stelly*, 733 F. Supp. 2d at 773.

Second, Penthol sufficiently alleges that Vertex improperly acquired the trade secrets. Vertex challenges this element by arguing that it legally obtained the trade secrets while the ███████ was in effect. Mot. at 18. But this argument ignores that Vertex can improperly use a trade secret that has been legally acquired. *See Allchem*, 2008 WL 1848461, at *4 (Ex. 11) ("A person can be liable for use of a trade secret if his use, *after he properly acquired knowledge of the secret*, constitutes a breach of the confidence reposed in him." (emphasis added)). That is exactly what the Complaint alleges in the provisions discussed in more detail below. Compl. ¶¶ 84–85.

19

Finally, Penthol alleges that Vertex used trade secrets without authorization. The Complaint alleges that, once the ███████ terminated, Vertex was "obligated to immediately cease using Penthol's trade secrets and to return them to Penthol." *Id.* ¶ 84. The Complaint further alleges that, instead of ceasing all use of Penthol's trade secrets, Vertex continued to copy and use them in marketing plans, customer lists, and business development activities related to Vertex's competing Group III base oil. *Id.* at ¶ 85. The Motion to Dismiss, of course, offers little in response. Vertex instead repeats its argument that Penthol has failed to identify the misappropriation of a specific trade secret. *See* Mot. at 18. But that is not the correct pleading standard by which the Complaint must be analyzed, and in any event, Penthol has sufficiently alleged the existence of specific trade secrets that entitle it to discovery that will reveal the full extent of Vertex's misappropriation. Given the Complaint's allegations—which must be taken as true—dismissal is improper at this time.

## VII.   CONCLUSION

The Court should deny Vertex's Motion to Dismiss. Further, in the unlikely event that the Court determines that Penthol has failed to adequately plead any of its claims, Penthol requests leave to amend its Complaint. Penthol further requests all other relief to which it may be entitled.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:   */s/ William M. Katz, Jr.*
      *Attorney-in-Charge*
      William M. Katz, Jr.
      Texas Bar No. 00791003
      S.D. Tex. Bar No. 21581
      William.Katz@tklaw.com

      One Arts Plaza
      1722 Routh Street, Suite 1500
      Dallas, TX 75201
      214-969-1700 (Telephone)
      214-969-1751 (Facsimile)

**ATTORNEYS FOR DEFENDANT
PENTHOL LLC**

*Of Counsel*

**THOMPSON & KNIGHT LLP**

J. Michael Bell
Texas Bar No. 02079200
S.D. Tex. Bar No. 5574
michael.bell@tklaw.com

Caitlin E. Gernert
Texas Bar No. 24093140
S.D. Tex. Bar. No. 3306023
caitlin.gernert@tklaw.com

Dina W. McKenney
State Bar No. 24092809
S.D. Tex. Bar. No. 3501700
Dina.McKenney@tklaw.com

811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

**MORGAN, LEWIS & BOCKIUS LLP**

Winstol D. Carter, Jr.

21

Texas State Bar No. 03932950
S.D. Tex. Bar No. 2934
winn.carter@morganlewis.com

William R. Peterson
Texas State Bar No. 24065901
S.D. Tex. Bar No. 1035932
william.peterson@morganlewis.com

Lewis A. Smith
Texas State Bar No. 24088439
S.D. Tex. Bar No. 2292401
lewis.smith@morganlewis.com

Heidi Rasmussen
Texas State Bar No. 24090345
S.D. Tex. Bar. No. 3027157
heidi.rasmussen@morganlewis.com

1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone:  (713) 890-5000
Facsimile: (713) 890-5001