UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENTHOL LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-416 |
| | § | |
| VERTEX ENERGY OPERATING, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR STAY**

William M. Katz, Jr.
Attorney-in-Charge
Texas Bar No. 00791003
S.D. Tex. Bar No. 21581
william.katz@tklaw.com
Dina McKenney
Texas Bar No. 24092809
S.D. Tex. Bar No. 3501700
dina.mckenney@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

J. Michael Bell
Texas Bar No. 02079200
S.D. Tex. Bar No. 5574
michael.bell@tklaw.com
Caitlin E. Gernert
Texas Bar No. 24093140
S.D. Tex. Bar No. 3306023
caitlin.gernert@tklaw.com

THOMPSON & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

Winstol D. Carter, Jr.
Texas State Bar No. 03932950
S.D. Tex. Bar No. 2934
winn.carter@morganlewis.com
William R. Peterson
Texas State Bar No. 24065901
S.D. Tex. Bar No. 1035932
william.peterson@morganlewis.com
Lewis A. Smith
Texas State Bar No. 24088439
S.D. Tex. Bar No. 2292401
lewis.smith@morganlewis.com
Heidi Rasmussen
Texas State Bar No. 24090345
S.D. Tex. Bar No. 3027157
heidi.rasmussen@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ..................1

III.   SUMMARY OF THE ARGUMENT ...............................................................2

IV.    FACTUAL BACKGROUND.............................................................................2

     A.     ██████████ ........................................................................... 2

     B.     The State Court Action .............................................................. 2

     C.     This Lawsuit............................................................................... 3

V.     ARGUMENTS AND AUTHORITIES.............................................................5

     A.     Abstention is improper because this lawsuit and the State Court Action are
         not parallel proceedings. ........................................................... 6

         1.     This lawsuit involves claims and issues that are not in the State
            Court Action.......................................................................... 6

         2.     The claims in this lawsuit are not compulsory counterclaims in the
            State Court Action, which shows that the proceedings are not
            parallel.................................................................................. 10

     B.     Even if the proceedings were parallel, abstention is improper because
         "exceptional circumstances" are absent here. ....................................... 12

         1.     Vertex admits that the first two factors support federal jurisdiction. ....... 13

         2.     The avoidance-of-piecemeal-litigation factor supports federal
            jurisdiction. .......................................................................... 13

         3.     Although the State Court Action was filed first, the order-of-
            jurisdiction factor still supports exercising federal jurisdiction............... 15

         4.     The federal-law factor supports exercising jurisdiction because this
            lawsuit involves two federal claims......................................... 17

         5.     Because the State Court Action cannot adjudicate Penthol's
            Sherman Act claim, this factor supports exercising federal
            jurisdiction. .......................................................................... 18

         6.     Rather than being "reactive" or "vexatious," this lawsuit involves
            legitimate claims that matured after the ██████ was terminated
            in late January 2021. .............................................................. 19

VI.     Conclusion ...................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*African Methodist Episcopal Church v. Lucien,*
    756 F.3d 788 (5th Cir. 2014) .................................................................5

*Am. Family Life Assur. Co. of Columbus v. Biles,*
    714 F.3d 887 (5th Cir. 2013) ...........................................................1, 13

*Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.,*
    408 F.3d 248 (5th Cir. 2005) .................................................................6

*Apogee Telecom, Inc. v. Univ. Video Servs., Inc.,*
    No. A-17-CA-00672-SS, 2018 WL 6220177 (W.D. Tex. Mar. 26, 2018).................7

*Aptim Corp. v. McCall,*
    888 F.3d 129 (5th Cir. 2018) ...........................................................12, 13

*Ben C. Jones & Co. v. Gammel Statesman Pub. Co.,*
    99 S.W. 701 (Tex. 1907).......................................................................11

*Black Sea Inv., Ltd. v. United Heritage Corp.,*
    204 F.3d 647 (5th Cir. 2000) ...............................................5, 12, 14, 16

*Brown v. Pac. Life Ins. Co.,*
    462 F.3d 384 (5th Cir. 2006) .................................................................5

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)................................................................. passim

*Credit Acceptance Corp. v. Fortenberry,*
    453 F. App'x 483 (5th Cir. 2011) .......................................................6, 12

*Davis v. Matagorda County,* 3:18-CV-00188,
    2019 WL 1367560 (S.D. Tex. Mar. 26, 2019)............................................9

*Davis v. Matagorda Cty.,* 3:18-CV-00188,
    2019 WL 1015341 (S.D. Tex. Mar. 4, 2019)..............................................8

*Eagle Oil & Gas Co. v. TRO-X, L.P.,*
    No. 18-0983, ___S.W.3d___, 2021 WL 1045723, at *5 (Tex. Mar. 19, 2021).......................11

*Eckhardt v. Shaun Kelley Weight Loss, Inc.,*
    No. H–09–0143, 2009 WL 922423 (S.D. Tex. April 3, 2009) ...............................7

*Emke v. Compana LLC,*
    No. CIV A 306CV1416–O BH, 2009 WL 1838976 (N.D. Tex. Jun. 22, 2009) ......................15

*Engenium Sols., Inc. v. Carr,*
    No. CIV.A. H-10-4412, 2012 WL 8432678 (S.D. Tex. Sept. 28, 2012).......................... passim

*Evanston Ins. Co. v. Gabriel,*
    No. 5-17-CV-00798-FB-RBF, 2018 WL 2728039 (W.D. Tex. June 6, 2018).............15, 16, 17

*Evanston Ins. Co. v. Jimco, Inc.,*
 844 F.2d 1185 (5th Cir. 1988) ...................................................................14, 17, 18, 19

*Gump v. Trinity Christian Acad.,* No. CIV.A.3:05 CV 0148 B,
 2005 WL 1766296 (N.D. Tex. July 25, 2005) ............................................................15

*Harrison v. XTO Energy, Inc.,*
 705 F. Supp. 2d 572 (N.D. Tex. 2010) .......................................................................8

*Hill v. McLane Co.,*
 No. 03-10-00293-CV, 2011 WL 56061 (Tex. App.—Austin Jan. 5, 2011, no pet.) ................16

*Koman v. Weingarten/Investments, Inc.,*
 No. CIV.A. H-10-1836, 2010 WL 3717312 (S.D. Tex. Sept. 17, 2010) ..........................10

*Magna Grp., Inc. v. Gordon Floor Covering, Inc.,*
 No. CIV. A. 3-99-CV-1926, 2000 WL 547098 (N.D. Tex. May 4, 2000) ...............................17

*Miller v. Granados,*
 529 F.2d 393 (5th Cir. 1976) ...................................................................................7

*Miller v. Warren Transp., Inc., 5:18-CV-00173,*
 2019 WL 11593056 (S.D. Tex. Feb. 7, 2019) ............................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
 460 U.S. 1 (1983).......................................................................................... passim

*Nat'l Cas. Co. v. Gonzalez,*
 637 F. App'x 812 (5th Cir. 2016) ............................................................................14

*Navarro Auto-Park, Inc. v. City of San Antonio,*
 580 S.W.2d 339 (Tex. 1979)....................................................................................16

*Piranha Partners v. Neuhoff,*
 596 S.W.3d 740 (Tex. 2020)....................................................................................18

*R.R. St. & Co. Inc. v. Transp. Ins. Co.,*
 656 F.3d 966 (9th Cir. 2011) ..................................................................................19

*SA Bay LLC v. Hall,*
 No. CIV.A. V-10-66, 2010 WL 5092978 (S.D. Tex. Dec. 7, 2010).................................15

*Saucier v. Aviva Life & Annuity Co.,*
 701 F.3d 458 (5th Cir. 2012) ..............................................................................13, 14

*Segenvo, LLC v. Providian Med. Equip., LLC,*
 No. CV H-19-1300, 2019 WL 5266163 (S.D. Tex. Oct. 17, 2019) ...................................5, 13

*Stewart v. W. Heritage Ins. Co.,*
 438 F.3d 488 (5th Cir. 2006) .........................................................................12, 13, 15

*Sw. Weather Research, Inc. v. Jones,*
 327 S.W.2d 417 (Tex. 1959).....................................................................................16

*Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.,* CV H-17-1068,
 2017 WL 1437299 (S.D. Tex. Apr. 24, 2017) ..............................................................5, 9

*Transocean Offshore USA, Inc. v. Catrette,*
   239 F. App'x 9 (5th Cir. 2007) ............................................................15

*Turner v. Pavlicek,* No. CIV.A.,
   H-10-00749, 2011 WL 4458757 (S.D. Tex. Sept. 22, 2011).......................7

*URI, Inc. v. Kleberg County,*

543 S.W.3d 755 (Tex. 2018)................................................................18

*Walker Centrifuge Services, L.L.C. v. D & D Power, L.L.C.,*
   550 F. Supp. 2d 620 (N.D. Tex. 2008) ....................................................19

*Welsh v. Fort Bend Independent School District,*
   860 F.3d 762 (5th Cir. 2017) ..........................................................10, 11

*Westbrook v. Advanced Solids Control, LLC,*
   2:14-CV-131, 2015 WL 4389044, at *3(S.D. Tex. July 15, 2015) ...........18

*Westbrook v. Advanced Solids Control, LLC, CV-131,*
   2015 WL 4389044 (S.D. Tex. July 15, 2015)..........................................18

**Rules**

TEX. R. CIV. P. 97(a)........................................................................10, 11

The Court should deny Defendant Vertex Energy Operating, LLC's Motion for Stay ("Motion for Stay") [Dkts. 14, 16]. As explained below, *Colorado River* abstention does not apply.

## I.     NATURE AND STAGE OF PROCEEDINGS

Penthol filed its Complaint on February 8, 2021, challenging (1) Vertex's efforts to stifle competition in the marketing and sale of Group III base oil in the United States, and (2) Vertex's improper conduct following the termination of the parties' ███████████████████████████ ███████████████. Original Compl. ("Compl.") ¶¶ 2, 5[Dkt. 1]. Penthol asserts claims against Vertex for violating Section 1 of the Sherman Act, breach of contract, business disparagement, and misappropriation of trade secrets under both the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). *Id.* ¶¶ 61–93.

Vertex has moved to dismiss all of Penthol's claims [Dkts. 11, 13]. Vertex has also asked the Court to stay this lawsuit in light of the state court lawsuit it filed against Penthol in the 61st Judicial District Court of Harris County Texas ("State Court Action"). Vertex concedes, however, that its Motion for Stay is "contingent upon the Court dismissing Penthol's Sherman Act claim" because "[t]he Fifth Circuit has rejected abstention when a claim is subject to exclusive federal jurisdiction like Penthol's Sherman Act claim." Motion for Stay ("Mot.") at 1, n.2.

## II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The Motion for Stay presents two issues that are reviewed under a two-tiered standard—de novo review for "whether the requirements of a particular abstention doctrine are satisfied" and abuse-of-discretion review for the abstention decision itself. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 891 (5th Cir. 2013).

1. Whether this lawsuit and the State Court Action are "parallel" proceedings.

2. Whether, assuming the proceedings are parallel, exceptional circumstances exist that warrant abstention under *Colorado River*.

Because the answer to each of these questions is "no," the Motion for Stay must be denied.

## III. SUMMARY OF THE ARGUMENT

The Court should deny the Motion for Stay for two reasons. *First*, this lawsuit and the State Court Action are not parallel. This Court has exclusive jurisdiction over Penthol's Sherman Act claim, which bars abstention under binding Fifth Circuit authority. And Penthol's other claims in this lawsuit are not parallel to any in the State Court Action because they are not compulsory counterclaims that must be asserted in state court. Penthol's non-Sherman-Act claims address events that occurred ***after*** the ███████ termination on January 27, 2021. In contrast, the claims in the State Court Action addresses events that occurred ***before*** termination. This temporal distinction likewise requires denial of the Motion for Stay under binding Fifth Circuit authority.

*Second*, even if the two proceedings were parallel, no "exceptional circumstances" support abstention. Indeed, none of the *Colorado River* factors weigh in favor of abstention.

## IV. FACTUAL BACKGROUND

████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████ Compl. ¶ 3. Group III base oil is used to make high-performance synthetic engine oils for passenger vehicles, industrial lubricants, food grade white oils, process oils, and high-performance, heavy-duty engine oils. *Id.* ¶ 2.

### B. The State Court Action

On October 13, 2020, Vertex filed the State Court Action against Penthol and asserted one claim for breach of contract. Ex. 1, Vertex's State Court Petition ("Vertex Pet.") ¶ 2. Vertex alleged that Penthol was violating certain provisions of the ███████ (before it was terminated) by contacting certain Customers and selling the Product directly to them. *Id.* ¶¶ 46–49. Vertex

also sought a temporary injunction, which the state court entered on November 11, 2020 ("Temporary Injunction"). Ex. 2, Temporary Injunction.

After removing the State Court Action to federal court, Penthol moved to dissolve the Temporary Injunction and filed counterclaims against Vertex on December 7, 2020. Ex. 3, Notice of Removal; Ex. 4, Motion to Dissolve; Ex. 5. Penthol's Am. Answer, Defenses, and Counterclaims. These counterclaims did not address Vertex's post-termination conduct because the ███████ was not terminated until January 27, 2021. Compl. ¶ 5; Ex. 5. Two days after termination, the federal court remanded the State Court Action. Ex. 6, Remand Order. After remand, the state court granted Penthol's renewed motion to dissolve the Temporary Injunction. Ex. 7, Order.

### C. This Lawsuit

The parties mutually agreed to terminate the ███████ on January 27, 2021.[1] Compl. ¶ 5. ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ *Id.* Because Vertex did not act in an orderly and commercially reasonable manner post-termination, Penthol filed this lawsuit asserting claims for Sherman Act violations, breach of contract, business disparagement, and misappropriation of trade secrets. *Id.* ¶¶ 61– 93.

Vertex has violated the Sherman Act by unreasonably restraining trade and injuring competition in the relevant markets for Group III base oil. *Id.* ¶ 44. But for Vertex's improper conduct: (1) Vertex's market power would be reduced; (2) there would be increased competition in the relevant markets; (3) prices for Group III base oil would be lower in those markets; and

---

[1] Although Vertex denies that the ███████ was terminated by mutual agreement, that dispute is irrelevant to the Motion for Stay.

(4) the quality and quantity of Group III base oil and related services offered for sale in those markets would be higher. *Id.* Vertex's conduct resulted in higher prices, less competition, and lower quality and quantity of Group III base oil in the relevant markets. *Id.*

Vertex breached the ███████ post-termination by failing to act in an orderly and commercially reasonable manner. *Id.* at ¶ 54. Among other things, Vertex cancelled meetings with Penthol, denied Penthol access to important information, misrepresented why the ███████ was terminated, and failed to process, finalize, and issue Purchase Contracts, Customer orders and invoices, and Product shipments. *Id.* Vertex also breached the ███████ by improperly conditioning its cooperation in winding down the ███████ and transitioning work to Penthol on the receipt of all amounts allegedly owed by Penthol, even though the ███████ provides that the parties must first determine what amount—if any—is actually owed. *Id.* at ¶ 52. Vertex's conduct damaged Penthol by forcing it to make costly alternate arrangements to process orders and ship the Product. *Id.* at ¶ 54.

Vertex has also disparaged Penthol and its economic interests post-termination by unilaterally contacting Customers and others, including the ADNOC, and falsely telling them that Penthol terminated the ███████ that Penthol is not a reliable supplier or distributor of the Product, and that Penthol will not be able to sell the Product to them anymore. *Id.* at ¶ 55. Vertex made these false misrepresentations to harm Penthol and its reputation and economic interests, in an attempt to displace Penthol as the Product's North American distributor. *Id.* at ¶ 56. Vertex has also made the post-termination transition of work from Vertex to Penthol as disruptive as possible to harm Penthol and its reputation. *Id.*

Finally, Vertex has misappropriated Penthol's trade secrets by continuing to use and disclose them, even though the ███████ is terminated. *Id.* at ¶ 58. Vertex has no right to

Penthol's confidential information and trade secrets post-termination, but Vertex is still using them to sell its own Group III base oil that competes with Penthol's Product. *Id.*

## V. ARGUMENTS AND AUTHORITIES

Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The *Colorado River* abstention doctrine represents an "extraordinary and narrow exception" to the federal courts' duty to exercise jurisdiction. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000). Under *Colorado River*, "a federal court may abstain only under exceptional circumstances." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014). "The Fifth Circuit instructs that a decision to abstain 'must be based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Segenvo, LLC v. Providian Med. Equip., LLC*, No. CV H-19-1300, 2019 WL 5266163, at *2 (S.D. Tex. Oct. 17, 2019) (Ex. 10) (quoting *African Methodist Episcopal*, 756 F.3d at 797). As the party seeking the stay, Vertex bears the burden of showing that abstention under *Colorado River* is proper. *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, CV H-17-1068, 2017 WL 1437299, at *1 (S.D. Tex. Apr. 24, 2017) (Ex. 11).

As a threshold matter, a court may abstain under *Colorado River* only if there are parallel proceedings in state and federal court. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 n.7 (5th Cir. 2006). If the proceedings are sufficiently parallel, the court must balance the six *Colorado River* factors on a case-by-cases basis to determine if "exceptional circumstances" exist to warrant abstention. *Segenvo*, 2019 WL 5266163, at *2 (Ex. 10). The courts must balance those factors carefully with "the balance ***heavily weighted in favor of exercise of jurisdiction***." *Id.* (emphasis added) (quoting *African Methodist Episcopal*, 756 F.3d at 798).

**A. Abstention is improper because this lawsuit and the State Court Action are not parallel proceedings.**

"*Colorado River* discretion to stay is available only where the state and federal proceedings are parallel—i.e., where the two suits involve the same parties and the same issues." *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005); *Credit Acceptance Corp. v. Fortenberry*, 453 F. App'x 483, 484 (5th Cir. 2011) (Ex. 12).   Only if the proceedings are parallel must the Court engage in *Colorado River*'s multi-factor analysis to determine if exceptional circumstances support deference to the state court. *Am. Guarantee*, 408 F.3d at 251 n.11 (citing, *inter alia*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

This lawsuit involves two types of claims: (1) a Sherman Act claim over which the Court has exclusive jurisdiction, and (2) claims for breach of contract, business disparagement, and misappropriation of trade secrets that address events occurring after the ▮▮▮▮▮▮ termination on January 27, 2021.  By contrast, the State Court Action involves claims based on pre-termination events.  Because this lawsuit and the State Court Action involve different claims and issues that matured at different times and arose from different facts, the proceedings are not parallel.  Accordingly, the Motion for Stay should be denied without reaching the *Colorado River* factors.

**1. This lawsuit involves claims and issues that are not in the State Court Action.**

Vertex argues that the proceedings are parallel because "[b]oth cases involve the same issues: the parties' respective performance and alleged breaches of the ▮▮▮▮▮▮" Mot. at 13.[2] But this Court has recognized that "[c]ommon subject matter alone is insufficient to establish the requisite parallelism." *Engenium Sols., Inc. v. Carr*, No. CIV.A. H-10-4412, 2012 WL 8432678,

---

[2] Vertex undermines this argument by later admitting that Penthol "brought different claims in each case" and "each proceeding will only *partially* resolve this dispute."  Mot. at 15 (emphasis original).

at *8 (S.D. Tex. Sept. 28, 2012) (Ex. 13); *see Turner v. Pavlicek*, No. CIV.A. H-10-00749, 2011 WL 4458757, at *4 (S.D. Tex. Sept. 22, 2011) (Rosenthal, J.) (Ex. 14) ("A common subject matter alone is insufficient to establish parallel actions."). "Rather, parallelism hinges on whether there is 'a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Engenium Sols.*, 2012 WL 8432678, at *8 (Ex. 13); *see Apogee Telecom, Inc. v. Univ. Video Servs., Inc.*, No. A-17-CA-00672-SS, 2018 WL 6220177, at *2 (W.D. Tex. Mar. 26, 2018) (Ex. 15) ("An important inquiry is whether the state litigation will dispose of all claims presented in the federal action."); *see also Eckhardt v. Shaun Kelley Weight Loss, Inc.*, No. H–09–0143, 2009 WL 922423, at *1 (S.D. Tex. April 3, 2009) (Ex. 16) (holding proceedings not sufficiently parallel when federal plaintiff amended state counterclaims to remove FLSA claim before re-filing that claim in federal court).

The State Court Action will not dispose of all claims presented in this lawsuit for at least three reasons. *First*, this lawsuit includes a claim over which the Court has exclusive federal jurisdiction, so the state court cannot resolve that claim. *Second*, this lawsuit includes additional claims that do not exist in the State Court Action. *Third*, the underlying factual determinations necessary to resolve the claims in this lawsuit differ from those required to resolve the claims in the State Court Action. Because parallelism is absent, the Court should deny the Motion for Stay without even conducting the *Colorado River* analysis.

a.    The proceedings are not parallel as a matter of law because this lawsuit includes a claim over which the Court has exclusive jurisdiction.

In this lawsuit, Penthol claims that Vertex violated the Sherman Act. "[T]he jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive." *Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976). Because Penthol's Sherman Act claim cannot be litigated anywhere but federal court, the State Court Action cannot dispose of all claims raised in this

lawsuit. Accordingly—as Vertex acknowledges, *see* Mot. at 1 & n.2—the proceedings are not parallel as a matter of law. *Harrison v. XTO Energy, Inc.*, 705 F. Supp. 2d 572, 577 (N.D. Tex. 2010) (holding that proceedings were not parallel when federal case presented claim for which there was exclusive federal jurisdiction); *Engenium*, 2012 WL 8432678, at *10 (Ex. 13) ("The Court does not believe that this case is even eligible for *Colorado River* abstention because the federal and state proceedings are not parallel. However, even assuming *Colorado River* does apply, great, if not dispositive, weight, must be accorded to the fact that this suit involves issues of exclusive federal jurisdiction.").[3]

> **b.** <u>Even without the Sherman Act claim, the proceedings still are not parallel because this lawsuit includes claims that are not in the State Court Action.</u>

Attempting to satisfy the parallelism requirement, Vertex argues that the two proceedings present "interdependent" claims and that Penthol's post-termination breach-of-contract claim would be precluded if Vertex proves in the State Court Action that that Penthol materially breached the ███████ Mot. at 13. Even if this argument were correct—and it is not—Vertex ignores that this lawsuit involves other claims that are not in the State Court Action and that are not based on an alleged breach of the ███████ including claims for business disparagement and misappropriation of trade secrets. Compl. ¶¶ 76–93. Vertex makes no attempt to explain how a ruling in the State Court Action could resolve the non-contract-based claims in this lawsuit.

Because this lawsuit's claims differ from those in the State Court Action, resolution of the State Court Action will not dispose of all claims in this lawsuit. Thus, the proceedings are not parallel. *See Davis v. Matagorda Cty.*, 3:18-CV-00188, 2019 WL 1015341, at *11 (S.D. Tex. Mar.

---

[3] Penthol's Response to Vertex's Motion to Dismiss explains why the Sherman Act claim cannot be dismissed because, among other things, Vertex has not even moved for dismissal of Penthol's per-se antitrust claim on appropriate legal grounds. MTD Resp. at 5–11.

4, 2019) (Ex. 17) ("Because there is no likelihood that the state litigation will dispose of all claims presented in the federal case, the federal and state lawsuits cannot be considered parallel proceedings."), *report and recommendation adopted*, 3:18-CV-00188, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019) (Ex. 18); *Tempur-Pedic N. Am.*, 2017 WL 1437299, at *2 (Ex. 11) (holding proceedings were "certainly related," but not parallel when the federal case "include[d] eight additional causes of action not found in the state court case based on federal and common law trademark infringement"); *Engenium Sols.*, 2012 WL 8432678, at *8 (Ex. 13) ("There is no substantial likelihood that all of the claims presented in the federal suit will be disposed of in the state litigation.").

      c.    <u>The proceedings are not parallel because the issues underlying the claims in this lawsuit differ from those underlying the State Court Action's claims.</u>

Vertex argues that the temporal distinction between this lawsuit (which involves post-termination claims) and the State Court Action (which involves pre-termination claims) is "a distinction without a difference for determining if the State and Federal Cases are parallel." Mot. at 13. But Vertex ignores that the pre-termination events underlying the claims in the State Court Action differ from the post-termination events underlying Penthol's claims in this lawsuit. For example, Vertex was entitled to use Penthol's trade secrets before the ████████ was terminated. Compl. ¶ 59. But post-termination, Vertex's continued use of those trade secrets gave rise to Penthol's misappropriation claim. *Id.* Thus, pre-termination events are irrelevant to Penthol's misappropriation-of-trade-secrets claim. *See Tempur-Pedic N. Am.*, 2017 WL 1437299, at *3 (Ex. 11) (finding that, although Tempur-Sealy's federal trademark claims were "certainly related" to the underlying state case, in which "Mattress Firm is asserting that it has a contractual right to use Tempur-Sealy's intellectual property," the proceedings did not involve the same issues and were not parallel).

In sum, although this lawsuit and the State Court Action may be related, they are not parallel because the claims in the two proceedings present different underlying issues. *See, e.g.*, *Koman v. Weingarten/Investments, Inc.*, No. CIV.A. H-10-1836, 2010 WL 3717312, at *6 (S.D. Tex. Sept. 17, 2010) (Ex. 19) (recognizing that, although the parties' claims were reflective of each other and governed by the same legal standard, they required different factual determinations that rendered them not parallel).

## 2. The claims in this lawsuit are not compulsory counterclaims in the State Court Action, which shows that the proceedings are not parallel.

Vertex argues that Penthol's claims in this lawsuit based on post-termination events are compulsory counterclaims in the State Court Action. Mot. at 13. Not so. The Fifth Circuit recently rejected this argument and confirmed that the compulsory-counterclaim rule does not bar a later proceeding involving claims that matured ***after*** the earlier proceeding was filed. *Welsh v. Fort Bend Independent School District*, 860 F.3d 762, 763 (5th Cir. 2017).

In *Welsh*, the Fifth Circuit analyzed whether res judicata barred the plaintiff from bringing a second employment-discrimination claim that matured during, but was not asserted in, an earlier employment-discrimination action. *Id.* at 764–67. Looking to Texas's compulsory-counterclaim rule,[4] the Fifth Circuit determined that the second claim was not barred because it had not matured when the earlier action was filed and expressly "rejected the idea that every time something

---

[4] Under Texas's compulsory counterclaim rule, a party defending a claim must assert "as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which *at the time of filing the pleading* the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." TEX. R. CIV. P. 97(a) (emphases added).

happens after a lawsuit is filed the plaintiff must immediately amend or risk losing that claim forever." *Id.* at 767.[5]

Applying *Welsh* to the facts here shows that the relevant inquiry is whether Penthol's claims in this lawsuit based on post-termination events were mature when Vertex filed the State Court Action on October 13, 2020, not whether this lawsuit and the State Court Action involve the same contract and parties. Because Penthol bases its claims on events that occurred after the ████████ was terminated on January 27, 2021, Compl. ¶¶ 5–8, those claims were not mature when Vertex filed the State Court Action over three months earlier.

Penthol's post-termination claims in this lawsuit were also not mature when Penthol filed its original counterclaims in the State Court Action on December 7, 2020, Ex. 5, because that was seven weeks before the ████████ was terminated. Although Penthol has subsequently amended its counterclaims in the State Court Action, it did so only *after* filing this lawsuit. Ex. 8, Penthol's Second Am. Answer and Counterclaims. Accordingly, the compulsory-counterclaim rule did not require Penthol to assert in the State Court Action claims that were already pending in this lawsuit. *See* TEX. R. CIV. P. 97(a) (defining compulsory counterclaims as claims that are "not the subject of a pending action").

For all these reasons, Penthol's claims in this lawsuit based on post-termination events are not compulsory counterclaims in the State Court Action. *Welsh*, 860 F.3d at 766–67; *see also* TEX.

---

[5] The Fifth Circuit also discussed Texas caselaw involving breach of an ongoing contract, noting that a second breach-of-contract claim is not barred by an earlier action on the same contract if the second claim accrued after the earlier action's filing. *Welsh*, 860 F.3d at 766 (citing *Ben C. Jones & Co. v. Gammel Statesman Pub. Co.*, 99 S.W. 701, 703 (Tex. 1907) ("It is true that under our system of practice the plaintiffs might have amended their petition and have introduced into that suit all causes of action which had accrued under that contract, but there is no rule of practice that required that they should do so.")); *see Eagle Oil & Gas Co. v. TRO-X, L.P.*, No. 18-0983, ___S.W.3d___, 2021 WL 1045723, at *5 (Tex. Mar. 19, 2021) (determining that res judicata did not bar a claim where "the alleged breaches in the two suits are premised on different conduct occurring at different times").

R. Civ. P. 97(a) (defining compulsory counterclaims as claims that the pleader has "at the time of filing the pleading"). This conclusion shows that the proceedings are not parallel, and thus the Motion for Stay should be denied.

**B. Even if the proceedings were parallel, abstention is improper because "exceptional circumstances" are absent here.**

The Fifth Circuit has explained that "[t]he *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources. It represents an 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) (footnote omitted) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "A *Colorado River* abstention analysis begins with ***a heavy thumb on the scale in favor of exercising federal jurisdiction***, and that presumption is overcome only by '***exceptional circumstances***.'" *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018) (emphasis added) (quoting *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)); *see also Credit Acceptance Corp. v. Fortenberry*, 453 F. App'x 483, 485 (5th Cir. 2011) (Ex. 12) (noting that abstention "is rarely appropriate"). Based on this standard, Vertex is entitled to a stay only if the *Colorado River* factors weigh heavily in favor of a stay.

To determine if exceptional circumstances exist, courts consider the following six factors:

> (1) assumption by either court of jurisdiction over a res,
> (2) relative inconvenience of the forums,
> (3) avoidance of piecemeal litigation,
> (4) the order in which jurisdiction was obtained by the concurrent forums,
> (5) to what extent federal law provides the rules of decision on the merits, and
> (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Aptim Corp.*, 888 F.3d at 135–36 (quoting *Stewart*, 438 F.3d at 491). When considering these factors, "the balance [should be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### 1. Vertex admits that the first two factors support federal jurisdiction.

Vertex acknowledges that the first two factors—the assumption of jurisdiction over a res and the relative inconvenience of the forums—"technically weigh[] against abstention." Mot. at 3. But they not only weigh against abstention; they affirmatively support exercising federal jurisdiction. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013) (explaining these factors "weigh[] in favor of exercising federal jurisdiction"); *Stewart*, 438 F.3d at 492 (noting these "factor[s] support[] exercising federal jurisdiction"); *see also Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 463 (5th Cir. 2012) ("Furthermore, even if no court had assumed jurisdiction over a disputed *res,* this factor would not be neutral—it would support the exercise of federal jurisdiction."); *Segenvo, LLC v. Providian Med. Equip., LLC*, No. CV H-19-1300, 2019 WL 5266163, at *4 (S.D. Tex. Oct. 17, 2019) (Ex. 10) ("Thus, this factor tips the scales further in favor of exercising jurisdiction.").

### 2. The avoidance-of-piecemeal-litigation factor supports federal jurisdiction.

#### a. <u>These proceedings are not piecemeal because there is no risk of inconsistent outcomes that are not preventable by res judicata or collateral estoppel.</u>

Vertex argues that this lawsuit should be stayed to avoid piecemeal litigation, asserting that "[b]ecause Penthol has brought different claims in each case and Vertex only has claims in the State Case, each proceeding will only *partially* resolve this dispute." Mot. at 15 (emphasis in original). But Vertex's argument misunderstands what "piecemeal litigation" means. It does not mean partial resolution of the parties' dispute. Instead, "piecemeal litigation arises primarily where parallel lawsuits 'pose[] a risk of inconsistent outcomes not preventable by principles of res

judicata and collateral estoppel.'" *Saucier*, 701 F.3d at 464 (alteration in original). And Vertex has not explained how allowing this lawsuit to proceed risks any inconsistent outcome with the State Court Action.

The "classic example" of piecemeal litigation arises when a state proceeding involves multiple defendants and one of them files a separate federal lawsuit, to which the other defendants are not parties, seeking a declaration of non-liability. *Id.* In that scenario, only the state proceeding could resolve all claims as to all parties; the federal proceeding could resolve only that one defendant's claim. *Id.*

But unlike the classic example, Vertex and Penthol are the only parties to this lawsuit and the State Court Action. Accordingly, the results in either forum will bind all parties, and there is no "risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Id.* Moreover, as Vertex acknowledges, the proceedings involve "different claims," Mot. at 15, which eliminates any risk of inconsistent outcomes that are not preventable by res judicata or collateral estoppel. Accordingly, this factor supports the exercise of jurisdiction.

b.   <u>Because this case does not involve a res or property, the "piecemeal litigation" factor is "less important" and weighs against abstention.</u>

Vertex claims that the piecemeal litigation factor "[s]trongly weighs in favor of abstention." Mot. at 3. But the Fifth Circuit has explained that the "real concern at the heart of the third *Colorado River* factor" involves the "concomitant danger of inconsistent results with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000). "[T]his factor is less important where, as here, the 'case does not involve jurisdiction over a res or property' and 'there is no danger of inconsistent rulings affecting property ownership.'" *Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 816 (5th Cir. 2016) (Ex. 20) (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)). Even if this litigation were

considered piecemeal—and again, it is not—the "real concern at the heart of the third *Colorado River* factor" is absent here because the proceedings do not involve a disputed res, so this factor weighs against abstention. *See Gump v. Trinity Christian Acad.*, No. CIV.A.3:05 CV 0148 B, 2005 WL 1766296, at *3 (N.D. Tex. July 25, 2005) (Ex. 21) ("Moreover, even if the litigation is considered piecemeal, this factor still weighs against abstention because the real concern regarding avoidance of piecemeal litigation is the danger of inconsistent rulings regarding res. In the instant cases, there is no disputed res; thus there is no such danger. Accordingly, this factor also weighs against abstention." (citation omitted)); *see also SA Bay LLC v. Hall*, No. CIV.A. V-10-66, 2010 WL 5092978, at *4 (S.D. Tex. Dec. 7, 2010) (Ex. 22) ("Because neither the state court nor this Court has assumed jurisdiction over a disputed *res,* there is no such danger. Moreover, … although the state and federal suits are between the same parties, they involve completely separate causes of action. This factor therefore weighs against abstention.").[6]

### 3. Although the State Court Action was filed first, the order-of-jurisdiction factor still supports exercising federal jurisdiction.

Priority is not measured exclusively by which proceeding was filed first. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 3. "For this factor to weigh in favor of abstention, a movant must show not only that the suit in federal court has not progressed, but also that the state action has progressed substantially." *Evanston Ins. Co. v. Gabriel*, No. 5-17-CV-00798-FB-RBF, 2018 WL 2728039, at *8 (W.D. Tex. June 6, 2018) (Ex. 21) (quoting *Emke v. Compana LLC*, No. CIV A 306CV1416–O BH, 2009 WL 1838976, at *5 (N.D. Tex. Jun. 22, 2009) (Ex. 22) (collecting authorities)). "Absent the required showing that the state court action has progressed substantially further than

---

[6] Even if this factor supported abstention, the Motion for Stay still should be denied. "This one factor, however, is insufficient to create the exceptional circumstances necessary to warrant a stay of the federal proceedings." *Transocean Offshore USA, Inc. v. Catrette*, 239 F. App'x 9, 13 (5th Cir. 2007) (Ex. 23) (citing *Stewart*, 438 F.3d at 493).

this one, this factor weighs against abstention." *Evanston*, 2018 WL 2728039, at *8 (Ex. 21); *see also Black Sea*, 204 F.3d at 651 ("As the state and federal suits are proceeding at approximately the same pace, this factor weighs against abstention.").

Vertex argues that the State Court Action has progressed further than this lawsuit because there has been discovery and a full-day hearing on Vertex's application for temporary injunction. Mot. at 16. But a hearing on a temporary injunction does not serve the same purpose as a hearing on the merits. *Sw. Weather Research, Inc. v. Jones*, 327 S.W.2d 417, 421–22 (Tex. 1959). A temporary-injunction hearing merely preserves the status quo at a "preliminary stage" of litigation, pending a future trial on the merits. *Hill v. McLane Co.*, No. 03-10-00293-CV, 2011 WL 56061, at *3 (Tex. App.—Austin Jan. 5, 2011, no pet.) (Ex. 24) (noting that a temporary injunction does not decide the case's merits, even if the injunction is granted); *see also Navarro Auto-Park, Inc. v. City of San Antonio*, 580 S.W.2d 339, 340 (Tex. 1979) ("The sole issue before the trial court is whether the party requesting the relief is entitled to preservation of the status quo of the subject matter pending trial on the merits. Thus, on appeal, the merits of the underlying case are not presented for review."). Accordingly, the temporary-injunction hearing and discovery in the State Court Action do not support abstention, especially when the injunction was recently dissolved. Ex. 7.

The State Court Action, like this lawsuit, is still in its infancy. In this lawsuit, the parties are briefing preliminary motions and starting to conduct merits discovery, as provided for in the Federal Rules of Civil Procedure and this Court's procedures. In the State Court Action, the parties have just finished briefing the dissolution of the temporary injunction and the only discovery that

has occurred relates to the now-dissolved injunction.[7]  Thus, there is currently no indication that

the State Court Action will reach the merits significantly sooner than this Court will.  *Magna Grp.,*

*Inc. v. Gordon Floor Covering, Inc.*, No. CIV. A. 3-99-CV-1926, 2000 WL 547098, at *3 (N.D.

Tex. May 4, 2000) (Ex. 25) (holding that when the state court "will not likely reach the merits of

the case at a time significantly sooner than [the federal court], this factor weighs against

abstention").  Because the State Court Action has not progressed "substantially further" than this

lawsuit, this factor support exercising jurisdiction.  *Evanston*, 2018 WL 2728039, at *8 (Ex. 21).

### 4. The federal-law factor supports exercising jurisdiction because this lawsuit involves two federal claims.

"The presence of a federal law issue 'must always be a major consideration weighing

against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender

only in rare circumstances."  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir. 1988)

(alteration in original) (quoting *Moses H. Cone*, 460 U.S. at 26).  The task is "not to find some

substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to

ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can

suffice under *Colorado River* to justify the *surrender* of that jurisdiction."  *Moses H. Cone*, 460

U.S. at 25–26.

Penthol has asserted two federal claims in this lawsuit: (1) a Sherman Act claim over which

the Court has exclusive jurisdiction, and (2) a misappropriation claim under the DTSA.  Compl.

¶¶ 61–68, 79–88.  These federal claims are "a major consideration weighing against surrender" of

jurisdiction.  *Evanston*, 844 F.2d at 1193.

---

[7] Although the Temporary Injunction initially set a trial date in the State Court Action, the state court has since dissolved that order.  Ex. 7.  The docket sheet in the State Court Action does not reflect a trial date. Ex. 9.

Vertex tries to minimize Penthol's federal claims by arguing that the presence of an allegedly "novel issue under Texas law" renders this factor neutral. Mot. at 17. But Texas has "well-settled contract-construction principles" that guide courts when interpreting contracts. *E.g.*, *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 747 (Tex. 2020); *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). Thus, even if interpreting the ██████████████████ ████ were a "novel issue," this Court is more than capable of following Texas's "well-settled" contract-interpretation rules. *See Miller v. Warren Transp., Inc.*, 5:18-CV-00173, 2019 WL 11593056, at *4 (S.D. Tex. Feb. 7, 2019) (Ex. 26) ("[District courts] routinely apply Texas state law … ."); *Westbrook v. Advanced Solids Control, LLC*, 2:14-CV-131, 2015 WL 4389044, at *3 (S.D. Tex. July 15, 2015) (Ex. 27) (noting that "district courts routinely interpret" state law).

In sum, Penthol's federal claims are "a major consideration" weighing against abstention, and contract interpretation under Texas law is not a "rare circumstance[]" favoring abstention. *See Evanston*, 844 F.2d at 1193. Accordingly, this factor supports exercising federal jurisdiction.

**5. Because the State Court Action cannot adjudicate Penthol's Sherman Act claim, this factor supports exercising federal jurisdiction.**

"The [adequacy-of-state-proceedings] factor recognizes that it would be 'a serious abuse of discretion' to abstain under *Colorado River* where there is 'substantial doubt' as to the state forum's adequacy. *Nat'l Cas. Co.*, 637 F. App'x at 817 (Ex. 20) (quoting *Moses H. Cone*, 460 U.S. at 28). Thus, this factor "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston*, 844 F.2d at 1193.

Because this Court has exclusive jurisdiction over Penthol's Sherman Act claim, the State Court Action cannot adequately protect Penthol against Vertex's anticompetitive conduct. *See Engenium Sols., Inc. v. Carr*, No. CIV.A. H-10-4412, 2012 WL 8432678, at *9 (S.D. Tex. Sept. 28, 2012) (Ex. 13) ("Furthermore, because the federal courts have exclusive jurisdiction over

copyright claims, the state proceedings will not adequately protect against copyright infringement."); *see also R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) ("For example, if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate."). Accordingly, this factor favors exercising federal jurisdiction.[8]

### 6. Rather than being "reactive" or "vexatious," this lawsuit involves legitimate claims that matured after the ▮▮▮▮▮ was terminated in late January 2021.

Vertex argues that the filing of this lawsuit ten days after the State Court Action was remanded "demonstrates that Penthol's Federal Case is a purely reactive maneuver to the district court's January 29, 2021 remand order in yet another attempt by Penthol to litigate this dispute anywhere but Texas state court." Mot. at 18–19. Not so. As explained above, this lawsuit presents a Sherman Act claim over which this Court has exclusive jurisdiction and other claims that did not mature until after the ▮▮▮▮▮ was terminated on January 27, 2021. Thus, this lawsuit's timing was dictated by Vertex's post-termination breaches of ▮▮▮▮▮▮▮▮▮▮▮, not improperly reactive or vexatious conduct.[9] That Penthol promptly sued Vertex for violating the Sherman Act and for other post-termination misconduct, in a court that unquestionably has jurisdiction over all of Penthol's claims, is neither reactive nor vexatious and certainly does not support abstention. The Motion for Stay should be denied.

---

[8] Even if Vertex were to obtain dismissal of Penthol's Sherman Act claim, this factor would be only neutral. There is no scenario in which this factor will ever support abstention. *Evanston*, 844 F.2d at 1193.

[9] Vertex cites only one inapposite case supporting its reactive argument. *See Walker Centrifuge Services, L.L.C. v. D & D Power, L.L.C.*, 550 F. Supp. 2d 620 (N.D. Tex. 2008). Unlike Penthol, the plaintiff in *Walker* effectively "concede[d] that the … action represent[ed] a reactive response to the court's prior remand of the state court." *Id.* at 628. And, as noted above, Penthol's claims did not mature until after the State Court Action was filed, which was not the situation in *Walker*.

## VI.    CONCLUSION

The Court should deny Vertex's Motion for Stay because this lawsuit and the State Court Action are not parallel proceedings.   And Vertex has failed to establish "exceptional circumstances" justifying abstention because the *Colorado River* factors support this Court exercising its jurisdiction.  Penthol further requests all other relief to which it may be entitled.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:    /s/ William M. Katz, Jr.
       *Attorney-in-Charge*
       William M. Katz, Jr.
       Texas Bar No. 00791003
       S.D. Tex. Bar No. 21581
       William.Katz@tklaw.com

       One Arts Plaza
       1722 Routh Street, Suite 1500
       Dallas, TX 75201
       214-969-1700 (Telephone)
       214-969-1751 (Facsimile)

**ATTORNEYS FOR DEFENDANT PENTHOL LLC**

*Of Counsel*

**THOMPSON & KNIGHT LLP**

J. Michael Bell
Texas Bar No. 02079200
S.D. Tex. Bar No. 5574
michael.bell@tklaw.com

Caitlin E. Gernert
Texas Bar No. 24093140
S.D. Tex. Bar. No. 3306023
caitlin.gernert@tklaw.com

Dina W. McKenney
State Bar No. 24092809
S.D. Tex. Bar. No. 3501700

Dina.McKenney@tklaw.com

811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

**MORGAN, LEWIS & BOCKIUS LLP**

Winstol D. Carter, Jr.
Texas State Bar No. 03932950
S.D. Tex. Bar No. 2934
winn.carter@morganlewis.com

William R. Peterson
Texas State Bar No. 24065901
S.D. Tex. Bar No. 1035932
william.peterson@morganlewis.com

Lewis A. Smith
Texas State Bar No. 24088439
S.D. Tex. Bar No. 2292401
lewis.smith@morganlewis.com

Heidi Rasmussen
Texas State Bar No. 24090345
S.D. Tex. Bar. No. 3027157
heidi.rasmussen@morganlewis.com

1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone:  (713) 890-5000
Facsimile: (713) 890-5001