United States District Court
Southern District of Texas
**ENTERED**
August 12, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PENTHOL LLC, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-416 |
| § | |
| VERTEX ENERGY OPERATING, LLC, § | |
| § | |
| Defendant. § | |

## ORDER

Pending before the Court is Vertex Energy Operating, LLC's ("Defendant") Motion to Dismiss. (Doc. No. 13). Penthol LLC ("Plaintiff") has responded (Doc. No. 25), and Defendant replied. (Doc. No. 32-1). After careful review of the briefing and the applicable law, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss.

### I. Background

According to the Complaint (Doc. No. 2-1), Plaintiff is a foreign distributer of Group III base oil[1] (the "Product"), which is primarily produced outside of the United States. In 2016, Plaintiff entered a Sales Representative and Marketing Agreement ("Agreement") with Defendant, a refiner and marketer of used motor oil, whereby Defendant would be an independent sales representative for Plaintiff's Product in North America. The Agreement contained a "Non-Circumvention Provision" under which the parties agreed to refrain from taking certain actions with respect to some customers and geographic areas while the Agreement is in place and for a two-year period following its termination. Allegedly, at the time the parties entered the Agreement,

---

[1] Group III base oil is "a type of base stock derived from petroleum crude oil that has undergone a rigorous refining process . . . and is used in a broad spectrum of applications that require efficiency and high performance, like engine oils, driveline fluids, and other automotive, hydraulic, marine, and industrial lubricants." (Doc. No. 2-1 at 7).

1

Defendant was not manufacturing or selling base-oil products that competed with the Product being sold by the Plaintiff.

At some point after entering the Agreement, Defendant allegedly began manufacturing and selling Group III base oil. Plaintiff alleges that as a result of Defendant's new endeavors, the Non-Circumvention Provision now "substantially reduces competition and results in consumers paying higher prices for Group III base oil and having less choice when it comes to suppliers of those products, because [Plaintiff] is effectively being removed as a competitor in the market for Group III base oil in North America." (Doc. No. 2-1 at 9–10). This allegation forms the basis of Plaintiff's Sherman Act claim.

According to the Complaint, Plaintiff and Defendant proceeded to exchange a series of letters pertaining to the termination of the Agreement. As alleged, on December 18, 2020, Plaintiff provided Defendant "Notice of certain Early Termination Events under section 7.1(b)(ii) of the Agreement." (*Id.* at 14). On January 19, 2021, Defendant apparently responded to that notice to dispute the occurrence of the alleged Early Termination Events, stating that Plaintiff "has no legitimate basis to terminate the Agreement under 7.1(b)." (*Id.*). On January 27, 2021, Defendant allegedly sent another letter stating that it "considers the Agreement terminated," and invoking section 7.2 of the Agreement, which governs the Parties' post-termination obligations. (*Id.*). On January 29, 2021, Plaintiff replied to Defendant, confirming the termination of the Agreement under section 7.1(d), and asserting that Defendant had breached its obligations under section 7.2 by unilaterally notifying customers of the termination and removing Plaintiff's access to customer information.[2] That letter also apparently asserted that Defendant had breached the "set-off and

---

[2] According to the Complaint, the Agreement was mutually terminated on January 27, 2021. The parties dispute whether the Agreement was mutually terminated or unilaterally terminated, two events that are governed by different sections of the Agreement. (*See* Doc. No. 2-1 at 8 & Doc. No. 13 at 14–15).

2

payment" provisions in section 7.2 because it conditioned its cooperation in the wind-down on the prior receipt of all amounts alleged owed by Plaintiff. (*Id.* at 15). Plaintiff sent another letter to Defendant on February 5, 2021, listing all the actions Defendant "must take" to comply with Section 7.2, and Defendant allegedly did not honor the requests. (*Id.* at 16).

Plaintiff further alleges that during and after Defendant's unilateral contact with Plaintiff's customers on January 28, 2021, it disparaged Plaintiff by falsely communicating that Plaintiff had terminated the Agreement unilaterally, was not a reliable supplier or distributer, and could not sell the Product to the customers anymore. Since Defendant had allegedly become a competitor to Plaintiff, Plaintiff argues these false statements were motivated by actual malice to harm Plaintiff's reputation and economic interest.

Finally, Plaintiff alleges that Defendant misappropriated Plaintiff's trade secrets relating to customers and the Product, including cost, price, logistical information, customer lists, contracts, and business plans. While Defendant was originally entitled to this information in its role as independent sale representative, it allegedly impermissibly used and disclosed that information for its own benefit as a new competitor.

## II. Procedural History

On October 13, 2020, Defendant sued Plaintiff in state court for breach of contract based upon Plaintiff's communications with customers in breach of their agreement. The state court granted a Temporary Injunction, and, after appealing that ruling, Plaintiff removed the case to the Southern District of Texas. Plaintiff filed four counterclaims against Defendant, including the same Sherman Act claim it asserts here. That case was ultimately remanded to state court on January 29, 2021 for a procedural deficiency in the removal process. Plaintiff filed a renewed Motion to Dissolve the Temporary Injunction, which the state court judge granted. It then filed the

instant lawsuit. Plaintiff now brings claims under Section 1 of the Sherman Act based upon the fact that the Agreement improperly restrains trade and reflects a horizontal agreement among competitors; and for post-termination breach of contract; business disparagement; and misappropriation of trade secrets under the federal Defend Trade Secrets Act (DTSA) and the Texas Uniform Trade Secrets Act (TUTSA). It additionally seeks a declaration that the Non-Circumvention Provision is invalid; or alternatively, that compliance with it is excused, as well as an injunction prohibiting Defendant from using trade secret information's and requiring the return of all trade secrets. Finally, Plaintiff seeks attorneys' fees and costs under the Sherman Act, the DTSA, and TUTSA. Defendant has moved to dismiss.

### III. Legal Standard

A party may file a motion to dismiss claims against it for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). A court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When

there are well-pleaded factual allegations, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

Exhibits to a complaint are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In ruling on a 12(b)(6) motion to dismiss, a court may "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Accordingly, the Court can consider the Agreement, which Plaintiff referenced, and Defendant attached to the Motion to Dismiss, in deciding this motion.

## IV. Analysis

A. Sherman Act Claim

Section 1 of the Sherman Act, 15 U.S.C. § 1 forbids "[e]very contract, combination . . . or conspiracy, in restraint of trade . . . ." A contract is "a compact between two or more parties." *McGuire v. Sadler*, 337 F.2d 902, 905 (5th Cir. 1964) (quotation omitted). "Essential to every § 1 offense is concert of action between separate business entities. It is axiomatic that unilateral activity by a single firm cannot be reached via this section." *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978) (collecting cases).

All parties agree that the Agreement was lawful at its inception: It allocated sales responsibilities to Defendant and distributing responsibilities to Plaintiff. The Non-Circumvention Provision provided that neither party would compete within the scope of the Agreement: "[N]either Party . . . shall circumvent the other, directly or indirectly." (Doc. No. 13-1 at 20). According to the Complaint, Defendant subsequently assumed a new role as a "direct, horizontal competitor of [Plaintiff] and the Product." (Doc. No. 2-1 at 9). Plaintiff argues that Defendant's conduct transformed the Agreement into an unlawful restraint on trade because the Non-Circumvention

5

Provision now functions to "substantially reduce[] competition and results in consumers paying higher prices for Group III base oil and having less choice." (*Id.*).

Plaintiff's argument that the Non-Circumvention Provision alone can satisfy the concerted action requirement is unavailing. Section I of the Sherman Act does not target independent action; it targets concerted action. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("Section I of the Sherman Act requires that there be a contract, combination or conspiracy between the manufacture and other distributers in order to establish a violation. Independent action is not proscribed.") (cleaned up). Concerted action requires "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto* 465 U.S. at 764. Here, there is no concerted anti-trade action because when the parties entered into the agreement, they did not agree to commit an unlawful objective.

Additionally, the Defendant's unilateral action post-agreement—allegedly becoming a competitor—lacks the "collaborative element required by Section I" to support a Sherman Act claim. *Spectrofuge*, 575 F.2d at 289. In *United States v. Parke, Davis & Co.*, the Supreme Court made clear that an *individual's* desire to adhere to a price-fixing regime would not have been sufficient to satisfy the combination required in a Sherman Act claim. 362 U.S. 29 (1960). In that case, it was the *collective* desire of multiple dealers to benefit by absence of price competition that supplied the necessary collaboration. *Id.* at 45. Here, all of the alleged anticompetitive effects arose from Defendant's unilateral decision to allegedly become a direct competitor to Plaintiff. That activity is outside the scope of the Sherman Act. *See Spectrofuge*, 575 F.2d at 286 (requiring concert of action for every § 1 violation). The Court holds that Plaintiff's allegations are not

6

sufficient to allege that Defendant engaged in concerted action with any other entity, and consequently, its Sherman Act claim must fail as matter of law.

B. Breach of Contract

To plead a breach of contract claim, a plaintiff must allege facts showing: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)). Defendant disputes only the third and fourth elements.

Generally, a court cannot go outside the complaint when ruling on a motion to dismiss, unless the document is incorporated by reference in the complaint and central to the claim. *See Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Doe v. Humble ISD*, 2019 WL 3288385, at *2 (S.D. Tex. July 22, 2019) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)). Courts have found that documents are central to a plaintiff's claim when they are necessary to establish an element of the claim but are not central if the documents are merely *evidence* of an element. *See Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662–63 (N.D. Tex. 2011) (collecting cases).

Defendant argues that as a threshold matter, the Court should look at the extrinsic letters exchanged between the parties because they are "central to the claim." (Doc. No. 13 at 13). According to Defendant, these letters contradict Plaintiff's allegations that the parties mutually agreed to terminate the Agreement which, in turn, could affect the Court's breach of contract analysis. Defendant points the Court to the Complaint, wherein Plaintiff refers to and even quotes extensively from a series of letters exchanged after entering into the Agreement that appear to have

7

a bearing on the nature of the termination of the Agreement. Plaintiff disagrees and urges the correspondence is not central to its claims and should not be considered. It argues only that it "could prove its breach-of-contract claim at trial without referring to the parties' correspondence," but provides no support for this statement. (Doc. No. 25 at 18).

Based upon Plaintiff's extensive quoting and referring to the letters in the Complaint to establish the circumstances under which the Agreement was terminated and breached, the Court finds that it can consider the letters. *See Rogers v. City of Yoakum*, 660 F. App'x 279, 285 (5th Cir. 2016). Plaintiff's bare assertion that it could prove the element of breach without the letters does not outweigh its heavy reliance upon the letters in its Complaint to establish the manner in which Defendant may have breached the contract.

Nevertheless, even considering the letters referenced in the Complaint, the Court finds that Plaintiff has pleaded a breach of contract claim sufficient to survive a motion to dismiss. Plaintiff's cause of action rests on Defendant's post-termination conduct that allegedly violated section 7.2 of the Agreement, which requires Defendant to "settle and liquidate all transactions and obligations entered into pursuant to the Agreement in an orderly and commercially reasonable manner." (Doc. No. 2-1 at 14). The letters in question arguably contradict Plaintiff's allegation that the Agreement was terminated mutually. Regardless of how the Agreement was terminated, however, section 7.2 requires Defendant to settle obligations in an orderly and commercially reasonable manner. (Doc. No. 25 at 19–20). Plaintiff has adequately alleged that Defendant did not do so. For example, Plaintiff claims the Defendant unilaterally contacted its customers and denied Plaintiff important information. (Doc. No. 2-1 at 17). Any fact issue as to whether Defendant complied with section 7.2 is not a question for the Court to resolve on a motion to dismiss. *See Multiflex, Inc. v. Samuel*

*Moore & Co.*, 709 F.2d 980, 988 (5th Cir. 1983) ("The question of reasonableness is a fact question for the jury.")

C. Business Disparagement Claim

To establish a business disparagement claim, a plaintiff must set forth allegations from which the court can reasonably infer that "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Defendant challenges the last element, special damages. To prove special damages, plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendants. *Johnson v. Hops. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996).

Defendant focuses on two of Plaintiff's allegations—that it has been injured and suffered special damages as a result of Defendant's conduct, and that it seeks compensation—to argue that Plaintiff has not alleged any specific lost sales, contracts, or "anything else that [Defendant's] allegedly false statements caused." (Doc. No. 13 at 19). In response, Plaintiff points to its allegations that Defendant "is now a competitor . . . and wants to sell its Group III base oil to the Customers, thereby displacing [Plaintiff] as the Customers' supplier," to demonstrate it has adequately pleaded special damages. (Doc. No. 2-1 at 16). The combination of Plaintiff's allegations of Defendant's disparaging communications to customers and its allegations that Defendant is actively competing with it for business is sufficient for the Court to reasonably infer that Plaintiff suffered pecuniary loss attributable to the false communications—special damages.

D. Misappropriation of Trade Secrets under DTSA and TUTSA

To state a claim under both DTSA and TUTSA, a plaintiff must allege that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or

9

discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772 (S. D. Tex. 2010).

The Court finds that Plaintiff has adequately alleged a claim under DTSA and TUTSA. First, Plaintiff sufficiently alleged the existence of trade secrets, including "Customer lists, Purchase Contracts . . . and business plans." (Doc. No. 2-1 at 21–22). Despite Defendant's arguments that Plaintiff has not alleged a specific trade secret, these types of confidential items are sufficient to defeat a motion to dismiss. *See Allchem Performance Products, L.P. v. Frey*, 2008 WL 1848461, at *4 (N.D. Tex. Apr. 21, 2008) (citing *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet dism'd)); *see also Stelly*, 733 F. Supp. 2d at 773 (noting that Plaintiff can collect evidence to support its claims more fully for trade secret misappropriation during discovery while acknowledging that Defendant may still be granted summary judgment).

Second, Plaintiff adequately alleged that Defendant improperly acquired the trade secrets. Defendant's argument that it had legally obtained the alleged trade secrets ignores the fact that Plaintiff can still allege that Defendant *improperly used* an originally legally- obtained trade secret. That is what Plaintiff has alleged. *See Allchem*, 2008 WL 1848461, at *4 ("A person can be liable for use of a trade secret if his use, after he properly acquired knowledge of the secret, constitutes a breach of the confidence reposed in him.")

Third and finally, Plaintiff has alleged that Defendant used trade secrets without authorization. Plaintiff contends that Defendant was obligated to stop using trade secrets and return them to Plaintiff after termination of the Agreement, but Defendant allegedly instead copied and used the trade secrets in its competing marketing plans, customer lists, and business development activities. (Doc. No. 2-1 at 22). Plaintiff is not required to specify the exact trade secret that was

used without authorization at this stage. *See Stelly*, 733 F. Supp. 2d at 773. Thus, Plaintiff has adequately alleged a claim for misappropriation of trade secrets under both DTSA and TUTSA.

### V. Conclusion

For the foregoing, the Court **GRANTS** in part Defendant's Motion to Dismiss as to the Sherman Act claim and **DENIES** in part the motion as to the remaining claims for breach of contract, business disparagement, and misappropriation of trade secrets. (Doc. No. 13).

Signed this 12 day of August, 2021.

Andrew S. Hanen
United States District Judge